THE STATE OF NEVADA, Respondent, v. FLOYD LOVELESS, Appellant.

No. 3410

August 16, 1944. 150 P. (2d) 1015.

·*Taylor H. Wines,* of Elko, and *Oliver C. Custer,* of Reno, for Appellant.

*Alan Bible,* Attorney-General, *W. T. Mathews* and *Geo. P. Annand,* Deputy Attorney-General, and *George F. Wright,* District Attorney, of Elko, for Respondent.

## OPINION

By the Court, DUCKER, J.:

The defendant was convicted in the district court of the Fourth judicial district of Elko County of murder of the first degree, for the killing of one A. H. Berning. The jury did not exercise their discretion to fix the penalty in their verdict, and the court, after denying a motion in arrest of judgment and a motion for a new trial, pronounced judgment of death against the defendant. He has appealed from the judgment and order denying his motion for a new trial.

This is the second appeal in the case. Upon the first appeal the judgment of death against the defendant was reversed and the cause remanded for a new trial. State of Nevada v. Floyd Loveless, 62 Nev. 17, 136 P. 2d 236. On the first appeal a number of errors were assigned which were discussed in the respective briefs. These errors were all discussed also in the oral argument on appeal. As to these, the court, in its decision, found as follows: "In defendant's assignment of errors we find none that is well taken. At least there is none that tended to his prejudice in respect to a substantial right." But the court, on its own motion raised the question of the validity of the judgment, and reversed it on the ground that it was void, and set the verdict aside.

A motion by the state to strike from the records, files, bill of exceptions and defendant's brief, certain assignments of error, was argued and submitted for decision at the time of the oral argument on this appeal. The motion is leveled at assignments numbered 1, 3, 4, 5, 6,

8, 12, 13, and 14, and upon the ground that each was submitted to this court on the first appeal and decided adversely to defendant, and cannot again be considered. It is the contention of the state that the second conviction of defendant on the identical charge was tried upon the same set of facts, circumstances, evidence, and testimony, and that the decision of this court on the first appeal is the law of the case as to errors complained of in said assignments and are therefore not reviewable on this appeal.

■ If the facts in this regard are as claimed, the contention is well taken, for it is a firmly established general rule that "an adjudication on the first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same." C. J. S., Appeal and Error, p. 1267, sec. 1821A; 3 Am. Juris. 541–544, sec. 985; Wright v. Carson Water Co., 22 Nev. 304, 39 P. 872; Crosman v. Southern Pac. Co., 44 Nev. 286, 194 P. 839; Bottini v. Mongolo, 45 Nev. 252, 200 P. 451; Barrett v. Franke, 48 Nev. 175, 228 P. 306. The rule is the same in criminal cases. 24 C. J. S., Criminal Law, p. 690, sec. 1840; 8 Cal. Jur. 568, sec. 567; People v. Marshall, 209 Cal. 540, 289 P. 629; People v. Hatch, 163 Cal. 368, 125 P. 907; Johnson v. Commonwealth, 225 Ky. 413, 9 S. W. 2d. 53.

The first assignment of error made in defendant's opening brief herein, is to the order of the court in the juvenile department dismissing the juvenile court proceeding against the defendant, and permitting him to be proceeded against in accordance with the law of this state governing the commission of crime. We may resort to the record in the first appeal to ascertain if this point was determined. 3 Am. Juris. 544, sec. 985; Barrett v. Franke, 48 Nev. 175, 177, 228 P. 306. The examination reveals that the same assignment was made therein as Exception No. 1, in appellant's opening brief, and discussed in his brief as well as in the state's answering brief.

Assignments 5 and 6 deal with the alleged error in admitting the testimony of witnesses S. O. Guidici and Frank Giocoechea concerning statements made by defendant in their presence at the time of his apprehension after the killing of Berning. Both witnesses being dead, their testimony was read from the transcript thereof at the first trial. It was therefore necessarily the same on both trials—and assignments 5 and 6 correspond with Exception Nos. 2 and 3 on the first appeal, the claims of error being that the statements amounted to a confession and that no proper foundation was laid for its admission. The exceptions were fully briefed in the opening and answering briefs on the first appeal.

■■ Assignments 3 and 4 relate to the admission of testimony of witnesses H. B. Alexander and Dino Aiazzi. They were witnesses also at the first trial. These men were in company with witnesses Guidici and Giocoechea when defendant was apprehended and their testimony was substantially the same as the testimony of the latter. The assignment and claim of error are that the statements made by defendant in their presence amounted to a confession and that a proper foundation for the admission thereof had not been laid. While Alexander and Aiazzi were also witnesses at the first trial, the admission of their testimony now complained of was not assigned as error on the first appeal. These assignments therefore cannot be urged now. To be availed of they should have been made on the first appeal, as the assignments concerning the testimony of Guidici and Giocoechea were made. They fall under the rule recognized in State v. Summers, 9 Nev. 399, of which the court said: "The error claimed in the present record, if existent, arose before the former appeal, and could and should have been therein considered, if so wished. It is too late to present it now; * * *." 5 C. J. S., Appeal and Error, p. 1279, sec. 1825; 3 Am. Jur. 549, sec. 995. Moreover, if the

admission of the testimony of Guidici and Giocoechea concerning defendant's statements was not error, it follows that the admission of substantially the same testimony by Alexander and Aiazzi, was not error under the rule of the former decision.

Assignment of error number 8 on this appeal, corresponds in all respects with Exception No. 5 of the first appeal. The error claimed in both instances goes to the admission of the testimony of witness Sheriff Harper as insufficient foundation for the introduction of the signed confession of the defendant. The testimony was the same on both trials, for the witness not being within the state at the time of the second trial, his testimony was read into the record from the transcript of the first trial. The assignment and exception were fully briefed on both appeals.

Assignments of error Nos. 12, 13, and 14 concern instructions number 18, 19 and 20 given on the second trial. They correspond to exceptions number 9, 10, and 12 of the first appeal, as to error in giving instructions number 15, 16, and 18, given on the first trial. A comparison of these instructions on both trials discloses that they are substantially the same. The assignments of error and exceptions were fully briefed on both appeals. We are of the opinion that the motion of the state to strike these assignments of error must, under the facts stated, and the rule applicable, be allowed. We do not understand defendant as questioning the general rule heretofore stated in this opinion, that after a case is remanded, the court on the second appeal will not consider those questions adjudicated on the first appeal. Consequently we will content ourselves with quoting from Wright v. Carson Water Co., supra, which states the rule and the reason thereof. The court said [22 Nev. 304, 39 P. 873]:

"The decision (on the first appeal) is the law of the case, not only binding on the parties and their privies, but on the court below and on this court itself. A ruling

of an appellate court upon a point distinctly made upon a previous appeal is, in all subsequent proceedings in the same case upon substantially the same facts, a final adjudication, from the consequences of which the court cannot depart. The supreme court has no power to review its own judgments in the same case, except upon petition for rehearing, in accordance with the rules established for that purpose. Such are the decisions of more than two hundred cases, decided in more than thirty states of the Union, besides a great number of the federal courts, including the supreme court of the United States." [1]

No rehearing was sought in the case of State v. Loveless, supra. [1]

Defendant contends, however, that the finding of this court on the first appeal above set out and relied on by the state as decisive of the questions, is not so for the reason that it was unnecessary to the decision, and dictum. [1]

There is no merit in this contention. The opinion expressed by this court on the former appeal as to the questions arising in the case, was not obiter dictum. It did not go beyond the case presented. The attention of the court was particularly called to them by defendant as points warranting a reversal: "Dictum," said this court in an early case, "is defined to be an opinion expressed by a Judge on a point not necessarily arising in a case. * * * The reason assigned for their not being entitled to weight is that usually they (dicta) are upon some point not discussed at bar—something to which the attention of the Court has not been particularly called—and something on which the Judge uttering them may not have reflected a moment before expressing his opinion." State of Nevada ex rel. Nourse v. Clarke, 3 Nev. 566. Such is not the case here. As we have pointed out, the questions were involved in the former appeal, briefs addressed to them by defendant and the state. They were orally argued and submitted to the court for consideration and decision, and decided.

Addressing itself to the question of dictum, and citing State of Nevada ex rel. Nourse v. Clarke, supra, the supreme court of Iowa said: "But by no authority is the expression of the views of the court on a question in the case regarded as dictum." State v. Brookhart, 113 Iowa, 250, 257, 84 N. W. 1064, 1066. "It is a mistaken opinion," said the court in Brown v. Chicago, etc., Ry., 102 Wis. 137, 154, 77 N. W. 748, 78 N. W. 771, 772, 44 L. R. A. 579, "that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case, and all the questions presented and considered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved. Trustees v. Stocker, 42 N. J. L. 115. The judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it. Quackenbush v. Railroad Co., 71 Wis. 472, 37 N. W. 834; Pray v. Hegeman, 98 N. Y. 351. Nothing is obiter, strictly so called, except matters not within the questions presented,— mere statements or observations by the judge who is writing the opinion, the result of turning aside for the time to some collateral matter by way of illustration." Citing, among other cases, State ex rel. Nourse v. Clarke, supra.

It was necessary to decide the questions arising on the first appeal, notwithstanding the ruling of reversal was on a different ground. As pertinently remarked in Florida Central Railroad Co. v. Schutte, 103 U. S. 118, at page 143, 26 L. Ed. 327: "It cannot be said that a case is not authority on one point because, although that point was proprely presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter." True, it was not essential to the decision reversing the judgment to decide these questions to dispose of the appeal, but it was necessary to decide them to establish the law of the case on all points involved,

and for the guidance of the lower court on retrial as to the issues which could reasonably be anticipated to be made thereon. This expectation became a reality on the second trial and the evidence was substantially the same as on the first trial. It would have been manifestly improper in this court not to have decided the questions presented to it, and to have dumped them back into the lap of the lower court in a fluid state, with all the uncertainty such a condition would cause.

The decision on the questions, we repeat, was decidedly not obiter, and at the least, was judicial dictum, which counsel for defendant seems to concede. However strictly regarded as judicial dictum, it was nevertheless binding as an authority on all questions decided. Brown v. Chicago, etc., Ry. Co., supra; Chase v. American Cartage Co., 176 Wis. 235, 186 N. W. 598; City of Detroit et al. v. Public Utilities Commission, 288 Mich. 267, 286 N. W. 368; Scovill Mfg. Co. v. Cassidy, 275 Ill. 462, 114 N. E. 181, Ann. Cas. 1918E, 602; Martin v. Commonwealth, 265 Ky. 292, 96 S. W. 2d 1011.

"Whenever a question fairly arises in the course of a trial," said the court in Chase v. American Cartage Co., supra [176 Wis. 235, 186 N. W. 599], quoting approvingly from Union Pacific R. Co. v. Mason City, etc., R. Co., 199 U. S. 160, 166, 26 S. Ct. 19, 50 L. Ed. 134, "and there is a distinct decision on that question, the ruling of the court in respect thereto can, in no just sense, be called a mere dictum."

And further, the court said:

"* * * When a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum, but is a judicial act of the court which it will thereafter recognize as a binding decision."

The principle above declared was sanctioned in City of Detroit et al. v. Public Utilities Commission, supra.

In Scoville Mfg. Co. v. Cassidy, supra, it was held

that an expression of opinion upon a point in a case deliberately passed upon by the court should be held as judicial dictum rather than a mere obiter and binding as an authority.

The court, in State ex rel. Nourse v. Clarke, supra, held judicial dictum to be an authoritative decision. See Dooly v. Gates, 194 Ga. 787, 22 S. E. 2d 730; Sowders v. Coleman et al., 223 Ky. 633, 4 S. W. 2d 731.

We are aware that it has been held that judicial dictum is not of equal binding force as an authority, as the point on which the decision of the case turned. But we think this is a rule too rigid to be recognized as the law of this jurisdiction.

"According to the more rigid rule," says Bouvier, "any expression of opinion however deliberate upon a question however fully argued, if not essential to the disposition that was made of the case, may be regarded as dictum; but it is, on the other hand, said that it is difficult to see why, in a philosophical point of view, the opinion of the court is not so persuasive on all the points which were so involved in the cause that it was the duty of counsel to argue them, and which were deliberately passed over by the court, as if the decision had hung upon but one point." 1 Bouvier's Law Dictionary, Rawle's Third Revision, p. 863.

And Bouvier further declares:

"So also it has been held, with respect to a court of last resort, that all that is needed to render its decision authoritative is that there was an application of the judicial mind to the precise question adjudged; and that the point was investigated with care and considered in its fullest extent.

Assignments of error numbered 1, 3, 4, 5, 6, 8, 12, 13, and 14 are stricken in compliance with the state's motion.

We now turn to those assignments of error that were undecided by our opinion on the former appeal.

Assignment of error number 2 is that the verdict is

contrary to the evidence and the law, in that the evidence will not support a conviction of murder of the first degree. A statement of the case should be made before discussing this assignment. On the 20th day of August, 1942, the defendant, a boy who was then between fifteen and sixteen years of age, and a companion around that age, travelling westward in a stolen car, arrived in Elko, Nevada, near the hour of 9:00 a. m. They had quarrelled along the road and agreed to separate. About 9:15 a. m. on that day, defendant stole an automobile in Elko and continued on his way westward along U. S. Highway 40 toward Carlin, in Elko County. He was followed shortly afterwards by his former companion. The constable of Carlin, A. H. Berning, who had been notified of the theft of the car in Elko intercepted the defendant on the highway near the former place. He said to the defendant, "I have got to take you in, Buddy," and went around on the right of the car, got in and closed the door. After Berning got into the car and told the defendant to drive him to Elko, the defendant shot him twice with a revolver. The bullet from one shot penetrated the officer's neck, and the other inflicted a slight wound on his side. Berning died from the effect of the wound in the neck a few days later. After the shooting defendant drove westward with the officer in his wounded condition some fifteen or twenty miles to a point on the highway where the road was under construction, and there abandoned the car and the officer. Shortly afterwards the defendant was apprehended on the highway by a posse about twenty-eight miles west of Carlin. One of the posse took from him a thirty-eight Colt revolver. When asked if he had any trouble with an officer up the road, he said: "Yes, I shot him twice."

On August 21, 1942, in the sheriff's office in Elko County, in the presence of the sheriff and district attorney and several others, the defendant made a confession which, on the next day, was reduced to writing by a

shorthand reporter who heard the questions and answers, and was signed by the defendant and acknowledged before a notary public. In his confession the defendant stated that he was born November 6, 1926. He detailed how he and his companion, Dale H. Cline, had escaped from a reform school at Plainfield, Indiana, on August 15, 1942, to which he had been committed for burglary, and made their way west, stealing a couple of cars and committing a series of burglaries on the way, finally arriving in Elko on the day of the shooting, where he stole the car he was driving when stopped by the constable. He admitted shooting the officer twice, and his statements concerning the shooting, and his subsequent actions, are as follows:

"Q. You say the constable stopped you? A. Yes, sir.

"Q. Where? A. By Carlin.

"Q. How did he stop you? A. I seen him out there on the road and I just stopped.

"Q. What happened then? A. He said he would have to take me back for being in a car I didn't belong in.

"Q. After the officer, Mr. Berning, had told you that he had to take you back, what happened then? A. He got in the car and I pulled out a gun and said I wouldn't go back with him. He grabbed the gun and I shot him. The gun got jammed and we started fighting and then I pulled the trigger again and it worked, and I drove off down the road. Stopped the car and got into the Buick.

"Q. How many times did you shoot Mr. Berning? A. Twice.

"Q. Where did the bullet strike him? A. I don't know.

"Q. Did you see any blood? A. Yes, sir.

"Q. Where? A. Coming out of his mouth.

"Q. Did Mr. Berning say anything after he was shot? A. He talked a little.

"Q. What did he say? A. He said he couldn't stand the pain.

"Q. Did you tell him what you were going to do with him? A. I was going to take him to a doctor.

"Q. Where did you last see Mr. Berning? A. Where they were working on a construction.

"Q. Where was he? A. In the car.

"Q. You left him in the car? A. Yes, sir.

"Q. Then what did you do? A. Got in the Buick.

"Q. When you got into the Buick did you have any conversation with Dale Cline? A. Yes, sir.

"Q. What was that conversation? A. I told him what had happened.

"Q. What did he say? A. He didn't say anything until we got down the road a piece and then Dale Cline said he saw a gun by a bush and I got out of the car to look for it and he drove off. * * *

"Q. Just where was Mr. Berning standing when you shot him the first time? A. He was sitting in the car.

"Q. How long had he been in the car? A. About a minute and a half.

"Q. Did you have your gun out in your hand before that time? A. No, sir.

"Q. Did Mr. Berning ever draw his gun? A. No, sir.

"Q. How long was it between the time of the first shot until you fired the second shot? A. Half a minute or minute.

"Q. And during that period of time what happened or took place in the car? A. He was trying to get the gun away from me.

"Q. Was the car moving at that time? A. No, sir, it was sitting still.

"Q. How long after the second shot was fired until you started west again? A. Quick as I got the car started."

Dale H. Cline, who was a witness for the state, testified that he caught up with defendant before he reached Carlin and stopped right behind him when defendant was stopped by the officer; that the officer waved him around the defendant and told him to go on, and as he drove away he looked through the back window of the

car and saw "Floyd (the defendant) and the constable wrestling around in the car, fighting or something"; that he stopped at a filling station a little further on; that while he was there defendant drove by and waved to him to follow; that he next saw defendant at a point where some road work was going on; that his car was parked on the left side of the road; that defendant waved him down; that he stopped and defendant got into Dale's car and they went on; that he asked defendant what happened and the latter said he had to shoot the sheriff; that when he was about one or two miles further on he told defendant that he saw a gun on the side of the road and as defendant got out to look for it he drove away and left him.

The above statement contains all the evidence that has any bearing on the question.

On the oral argument counsel for defendant stated that said assignment number 2 presented their main point in the case. The killing of the constable is not denied, nor is it denied that the offense proved was murder. But they contend that though it be murder, it is, at the most, murder of the second degree, because there is no sufficient or any proof of that deliberation and premeditation essential to the higher degree of murder.

■ We cannot lend our assent to this view. On the contrary, the circumstances of the case are such that we feel no difficulty in determining that the jury were well justified in finding that the killing of the officer was willful, deliberate, and premeditated. Putting aside the evidence which discloses that the accused was a criminal character who, shortly prior to the killing, had traversed the streets of Elko armed with a concealed and deadly weapon, looking for an opportunity to commit a crime, and that he had committed it by stealing an automobile, and was driving it away when accosted and stopped by the officer, the immediate circumstances surrounding the shooting were in themselves sufficient to warrant a legitimate inference that prior

to the firing of the first shot defendant had formed the deliberate design to kill the officer. It may have been a conditional design to be accomplished if the officer undertook to arrest him, but even so, when carried into effect on the occurrence of the event it was sufficient deliberation and premeditation to warrant the finding of the jury. The argument in support of the contention that murder of the first degree was not proved, is based on the assumption that the evidence shows without conflict, that the shooting was done during a struggle, and that this precluded the formation of a deliberate design to kill. But the jury could have well believed that there was no struggle, at least until the defendant undertook to shoot the officer pursuant to his declared determination not to go back with him. From the time of his first contact with the officer, when the latter told him he would have to bring him back for being in an automobile he didn't belong in, the defendant had ample time to reflect upon his line of action while the constable was walking around in front of the automobile and was entering the car. Then the event proved the defendant was ready for action. He drew his gun to enforce his resistance and the shooting followed.

██ But conceding, for the purpose of discussion only, the contention of defendant that the intent to shoot Berning was formed during a struggle, that does not preclude deliberation and premeditation. It does not matter how short the time is before the premeditated design is carried into effect. State v. Millain, 3 Nev. 409; State v. Ah Mook, 12 Nev. 369; State v. Acosta, 49 Nev. 184, 242 P. 316. The question of premeditation is always one of fact for the jury, and each case is governed by its own circumstances. The cases cited by counsel in support of their contention that deliberation and premeditation could not be formed during a struggle, are cases of mutual combat and are authority only under the particular circumstances involved. They are not analogous with the facts here, which, under no

theory, can be said to be a case of mutual combat, but instead, the case of an officer apprehending a criminal with the fruits of his crime in his possession, and endeavoring to make an arrest. The evidence is clear that defendant knew at the time that Berning was an officer. He told Cline when the latter took him into his car: "I had to shoot the sheriff." Why did he feel he had to shoot the officer? Not in self-defense. This is not pretended. The defendant said the officer did not draw his gun. Obviously he shot him to avoid arrest for the commission of a felony. His intention was deadly. The character of the weapon used and the manner of its use precludes any inference other than intent to kill.

■ Assignment number 7 presents the alleged error of the court in permitting the state to read in evidence the testimony of Dale H. Cline, stenographically reported by the official reporter at defendant's first trial. There was no error. This was permissible under section 11252, N. C. L., the witness then being beyond the jurisdiction of the court. A proper foundation was laid showing the witness to be at the time in an institution in Inglewood, Colorado, and by proving the testimony to be correct in accordance with the terms of the statute.

■ The contention under this assignment that the court committed error in refusing to grant a continuance from the then Tuesday to the following Friday, when it appeared that the witness would be available at the latter date, is without merit, for the reason alone that the defendant did not ask for a continuance.

■ Under assignment number 9 objection is taken to the ruling of the court in refusing instruction number 1, offered by defendant, which is as follows:

"If you find from the evidence beyond a reasonable doubt that the said A. H. Berning, the deceased, was unlawfully, feloniously and unjustifiably shot and wounded by the defendant and as a result thereof died

thereafter as charged in the information, and that the killing was the result of malice suddenly produced at the time the fatal shot was fired and was without premeditation and deliberation, then it is your duty to find the defendant guilty of murder in the second degree."

The court's refusal was based upon the ground that the requested instruction was covered by another instruction. The ruling was correct. The record shows that the jury was fully and properly instructed by the court as to what constituted murder of the first degree. In these instructions the point of the refused instruction that murder, without deliberation and premeditation, is murder of the second degree, was as favorable for defendant as the instruction refused. It has been held many times by this court that the refusal, under such circumstances, of an instruction offered by defendant, is not error. State v. O'Connor, 11 Nev. 416; State v. Buralli, 27 Nev. 41, 74 P. 532, and Nevada decisions cited therein; State v. Willberg, 45 Nev. 183, 200 P. 475. The refusal was not an error in this case.

 Assignment of error number 10 goes to the refusal of the court to give defendant's offered instruction containing the statutory definition of manslaughter. It was refused upon the ground that it was not applicable in view of the evidence. We might dispose of this contention on the simple ground that the jury having found the defendant guilty of murder of the first degree on evidence amply sufficient to justify the verdict, the defendant could not have been prejudiced by the refusal of the court to give the instruction requested. However, in manslaughter, there must be absence of malice, and there is no evidence in the case tending to show in the slightest degree that the defendant was not actuated by malice in shooting the officer. The contrary, we think, was clearly established. The defendant admitted that the officer merely sought to effect an arrest. No unlawful act was attempted. If the officer grabbed the gun, as defendant stated, it was

an act of self-defense and done pursuant to his authority to arrest the defendant. The circumstances of the killing are sufficient to bring into operation the rule of the statute, that malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. There was no error in refusing the proposed instruction.

■ Instruction number 6, complained of in assignment of error number 11, was not erroneous. It reads:

"You are instructed that if you find, beyond a reasonable doubt, that the defendant, Floyd Loveless, did or on about the 20th day of August, 1942, near the City of Carlin, County of Elko, State of Nevada, with malice aforethought, and with intent then and there to kill one A. H. Berning, shoot and critically wound and injure the said A. H. Berning with leaden shots discharged from a revolver held in the hands of and fired by the said defendant, thereby causing the death of the said A. H. Berning on August 22, 1942, you will find the said defendant guilty."

It is claimed that the instruction is erroneous and misleading because, omitting the elements of deliberation and premeditation, it could have lead the jury to believe though it did not find these elements, it could convict the defendant of murder of the first degree. It is asserted that the instruction was particularly susceptible to the fault because based on the allegations of the information which, the court instructed, charged murder of the first degree. We find no fault in the instruction. It did not tell the jury that if it found the facts stated it could find the defendant guilty of murder of the first degree, but that it could find the defendant guilty. This was technically correct. We do not think the instruction could have been misleading when considered in connection with the other instructions defining murder of the first and second degree, as the court instructed the jury to do. The distinction

between the two degrees was clearly drawn in the other instructions.

This disposes of all the errors assigned that were not disposed of on the first appeal.

No prejudicial error appears in the record.

The judgment and order denying the motion for a new trial appealed from are affirmed, and the district court is directed to make the proper order for the carrying into effect by the warden of the state prison, the judgment rendered.