RICHARD CARL HEINEN, Appellant, *v.* FRANCIS ROWLEY HEINEN, Respondent.

No. 3490

November 25, 1947.                    186 P.2d 770.

**528**

*Morley Griswold* and *George L. Vargas*, both of Reno, for Appellant.

*Springmeyer & Thompson*, of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

The respondent, Frances Rowley Heinen, commenced her action for a divorce from the appellant, Richard Carl Heinen, on July 11, 1946, upon the grounds of the defendant's extreme cruelty pleaded in the words of the statute, and for the custody of the minor children of the parties, two sons of the respective ages of five and three years. Appellant answered, attacking the plaintiff's claimed residence in the State of Nevada, denied her allegations of cruelty and prayed that she take nothing by her complaint. He sought on his part no affirmative relief. The cause was tried to a jury which rendered the following verdict: "We * * * do find for the plaintiff and against the defendant, and do grant a divorce to the plaintiff." The court thereafter rendered judgment dissolving the marriage. Additional evidence was adduced before the court without a jury on the issue of the custody and support of the minor children, and the court rendered its decision awarding such custody to the respondent subject to right of visitation in the appellant.

The court then made its findings and conclusions and entered its judgment and decree, wherein it reserved jurisdiction as to custody and support of the children and all matters concerning property rights. Defendant appealed from the judgment and from the court's subsequent order .denying his motion for new trial.

Appellant recites seventeen distinct specifications of error. Of these, specifications Nos. 1, 2, 4, 5, 6, 7 and 8 have to do with rulings on the admissibility of evidence. Specifications Nos. 9 to 13 attack the sufficiency of the evidence to sustain the findings with reference to the plaintiff's residence and the defendant's cruelty. Specifications 14 and 15 allege error in the court's denial of the appellant's motion for a new trial. Specification 16 attacks the findings and specification 17 attacks the court's right to reserve jurisdiction over the property rights of the parties, it being asserted that not only was the issue of property rights not raised but that it was specifically excluded by the recitals in the pleadings of both parties.

As we are satisfied that the judgment and the order denying appellant's motion for a new trial must be reversed and a new trial ordered by reason of appellant's specification No. 3, it will not be necessary to pass upon the other specifications. Specification No. 3 reads as follows: "That the trial court committed error in limiting the number of depositions offered by defendant on his case in chief and in refusing to admit depositions concerning which an offer of proof was made."

In order to determine the propriety of the court's order denying appellant's offer of additional depositions and in order to appraise the effect of such order, an analysis of the case up to the point of the offer of these depositions is necessary. Plaintiff called as her first witness Richard Carl Heinen, the defendant, as an adverse witness. He was examined as if under cross examination, N.C.L. sec. 9420, and the examination comprised almost entirely his consistent denials of any improper

conduct or of any act that could be said to constitute either physical or mental cruelty. There was next read in evidence the deposition of John Rowley, a brother of the plaintiff wife, who testified to his presence at numerous small gatherings, shows, dancing parties, vacations, visits exchanged between the two families, etc.; that he particularly noticed on numerous occasions that defendant was unsympathetic, bitterly sarcastic, lacked understanding of his wife, ridiculed her about the children, her cooking, etc., took a superior attitude and seemed to delight in emphasizing her mistakes in front of the witness' family or other friends; that he appeared to be very cold and lacked husbandly affection and understanding; that his conduct was such as to cause her to become emotionally upset to the point of crying; that his sarcasm, lack of sympathy and understanding, and his public ridicule of his wife were sufficiently numerous and constant to become a subject of discussion between the witness and his wife and the mutual friends of the plaintiff and the defendant. Although a few specific instances were recited he testified, when asked on direct examination to specify as to dates and places and persons present and the substance of the words used by the defendant, that the defendant's conduct was frequent and not limited to any time, place or circumstance, that it happened in the home of the witness, in the home of the parties and at any other public gathering where the fancy struck the defendant, but that he observed this attitude "manifestly" in the presence of the witness' wife and the witness' mother and the defendant's mother and father and brothers and sisters and mutual friends. When again asked (by written cross-interrogatory) to state as nearly as he could recall the place, date and persons present at each or any instance in which the plaintiff's conduct was thought improper, he stated that the occasions were so numerous as to be impossible of detailing each one separately as to time, place or person.

Plaintiff then read in evidence the deposition of her

sister-in-law, Shirley Rowley, who testified to weekly visits interchanged for the past four years, and the frequent presence of both families at social gatherings at the homes of mutual friends and occasional dinners and theater parties. The testimony is general except as to specifying that on some of the occasions plaintiff's mother, defendant's sister, the latter's husband and the witness' husband were present, and that some of these occasions were in the witness' home and some in the home of plaintiff and defendant; that most of the time he treated her with respect and kindness, but that there were occasions when he was sarcastic and appeared to be lacking in understanding by making her the butt of witticisms and jokes and holding her up to ridicule and would make some sarcastic remark or criticism of plaintiff so that she would become upset and cry. On the whole the testimony of this witness reflected favorably on the conduct of the defendant. Plaintiff then called her brother, Edward H. Rowley, Jr., who did not testify to any acts of cruelty, although he saw the parties several times a year at the home of the witness' mother or the home of the witness' other married sister or the home of the parties. She then called her mother, Juliette Looney Rowley, who testified to a few specific instances of objectionable conduct on the part of the defendant. She also testified to the instances in which she had assisted the defendant financially.

The plaintiff then took the stand herself and testified at length concerning financial matters from which it appears that the parties were living far beyond the earnings of the defendant and largely upon the income from some substantial trust estates created by the plaintiff's father and mother, respectively. She then testified to numerous acts of "mental cruelty" on the part of defendant (sarcasm, ridicule, criticism, belittlement, etc.), but also generalized as did her brother. When asked how he treated her when they were out with friends, she stated that his treatment of her was so general that she could

not recall every incident, and that there were many instances and times when he was domineering and sarcastic; that it often happened that he would ridicule any remarks she would make and that she would suffer it for a time and finally would cry. She also testified to statements made by him which she interpreted as a threat to kill himself and her and the children, to one occasion when he seized her arm and one when he seized her by the neck, to his lack of consideration in their sexual relations and his demands for unreasonably frequent intercourse, and to his having the children baptized in the Catholic church without consulting her wishes.

The appellant does not assert on this appeal that the plaintiff herself did not testify to sufficient acts of cruelty on the part of defendant to support a finding of extreme cruelty on the part of a jury. Although plaintiff relied upon the one cause of action of extreme cruelty, the defendant's conduct of which she complains would seem to be along several distinct lines. These lines would appear to be as follows: (1) The defendant's uniformly unsympathetic, sarcastic, ridiculing and belittling attitude and remarks made in the presence of others; (2) the defendant's threats of personal violence to himself and to the plaintiff and to their children; (3) the defendant's unreasonable sexual demands; (4) the defendant's attitude toward his financial responsibilities and his financial transactions with the plaintiff and with the plaintiff's mother, including his attitude to the trust estates of which the plaintiff was beneficiary, and to the plaintiff's testamentary plans; and (5) his arbitrary actions in having the children baptized in the Catholic faith without consulting the plaintiff's wishes in the matter. Some of these charges found some corroboration in the testimony of the members of plaintiff's immediate family. All were denied by the defendant testifying in his own behalf. The lines of conduct listed as Nos. 2, 3, 4 and 5 were naturally subject almost entirely to the statements and denials of the parties to

the action, although plaintiff's mother corroborated to some extent the plaintiff's testimony as to the defendant's threats and his conduct in connection with the financial affairs of the parties. Defendant's treatment of plaintiff in numerous and frequent gatherings over the entire period of their married life in the presence of mutual friends and relatives constituted a major, if not the major, cause of complaint.

After testifying in his own behalf defendant read in evidence thirteen depositions. These deponents included certain relatives of the defendant and friends and neighbors who had been present at family and friendly gatherings during the entire period of the marital status. After the thirteenth deposition had been read in evidence, a recess was had and when the court reconvened, the following took place:

"The Court: Mr. Vargas, are these depositions which you are intending to read to the jury along the same lines as the depositions which you have already offered?

"Mr. Vargas: Your Honor, the evidence will show that these people are close associates of both plaintiff and defendant.

"The Court: Is there anything different in the depositions which you expect to read into evidence from those you have already read into the record?

"Mr. Vargas: They are all to the same general effect as those that I have read, but they are different witnesses and different questions and answers.

"The Court: I will have to exercise my discretion and restrict the number of depositions in this case. The rule of law is well settled that a District Judge may limit the number of witnesses or the number of depositions. If any of the depositions which you expect to offer contain anything other than those which you have already offered, you may read them in evidence.

"Mr. Vargas: If I may be heard. Your Honor will recall the deposition of John Rowley, a witness for the plaintiff, a brother of the plaintiff, to the general effect

that Mr. Heinen was critical and sarcastic and that this conduct happened on occasions too numerous to mention, and the plaintiff has testified that happened right away after the marriage and, before the marriage, she said Mr. Heinen was complimentary, and immediately after the marriage he was sarcastic and he criticized her, and that that conduct continued until the date of the separation and up to February of this year. These depositions are of persons who lived as neighbors or who were in their home socially, plaintiff and defendant were at the homes of these witnesses socially and, in meeting that type of testimony, I can only avert it by the testimony of these witnesses, and because the case is being tried in Reno and not in Dallas, I can only do that by deposition. In other words, the depositions cover all of the close acquaintances and intimate friends of the parties during their married life and it is the only possible way that I have of counteracting that portion of the testimony of the plaintiff and her witnesses and, for that reason, I am going to request that I be permitted to put in all of these depositions.

"The Court: I do not want to restrict you or Mr. Springmeyer; neither do I wish to be bothered, or have the jury bothered, with a lot of unnecessary depositions and if they are all along the same lines as those depositions which you have read, you have already established sufficient evidence of that character.

"Mr. Springmeyer: We have no objection to a reasonable number, as he had a right to twenty-eight, we could not raise any objection.

"Mr. Vargas: She has eighteen depositions and I do not want to take up the time of the Court or the jury unnecessarily, and I submit the jury can draw its own conclusions as to which witnesses are telling the truth or untruth after hearing all of the depositions.

"The Court: If these depositions have anything different from the depositions already admitted, they may be read, but if they are along the same lines and they have

the same identical questions and answers, they will not be admitted.

"Mr. Vargas: They do not have the same identical questions and answers.

"The Court: They have practically the same questions and answers; that she took a trip, and that she came back sick, and she did not complain, and Mr. Heinen took care of her, and so forth.

"Mr. Vargas: If the Court please, I could take time to look over the depositions, but I am going to offer the rest of them in evidence and perhaps it would save time if I made an offer of proof.

"The Court: You may do so."

Counsel for defendant then made an offer of proof, offering the depositions of ten additional witnesses "for the purpose of refuting the testimony of plaintiff and her witnesses that defendant was critical and sarcastic and * * * uncomplimentary * * * and that these depositions are depositions of the persons most closely associated with the plaintiff and defendant during the years of their marriage, and due to the court's ruling restricting the number of depositions on behalf of the defendant, I have been denied the opportunity of fairly meeting the issues raised by the plaintiff." Further discussion between court and counsel indicated that the additional depositions offered were to the same general effect that the defendant had always treated the plaintiff with kindness, courtesy and affection and would tend to disprove the testimony of the plaintiff and her witnesses as to the defendant's criticism, harassment, sarcasm and uncomplimentary remarks. The court rejected the offer of proof, saying "I have told Mr. Vargas if any of the depositions not read contain anything different from those already admitted, that he may read them, but he has no right to take up the time of the court and jury by reading his depositions and unnecessarily encumbering the record."

Appellant contends: "By limiting depositions, the

trial court effectively and completely prevented the appellant from presenting, arguing to, and impressing upon, the jury, that they had before, them testimony of the entire circle of associates during the period of the married life of the parties in the action, and that, without exception, such complete circle of associates denied, refuted and disproved the contentions of the respondent, her brother and her mother in regard to the matters hereinbefore mentioned. Where appellant was permitted only to present a portion of that circle, he could not urge upon the jury that from the evidence in the case and from the evidence before them, it had been established that not a single person, outside of the mother and brother of respondent, had ever heard or observed any of the things which respondent contended and upon which respondent relied."

As against this contention, it is urged by respondent that the offered depositions were all negative in character, that they were merely cumulative in their nature and effect, and that the matter of limiting the number of depositions was entirely within the discretion of the trial court. In support of this contention respondent relies strongly upon the case of Schoblom v. Schoblom, 117 Wash. 67, 200 P. 579, 580, in which the Washington court in a somewhat similar case upheld the right of the trial court in the exercise of its discretion to limit the number of witnesses that may be called "upon a particular issue, but that this discretion does not clothe the court with arbitrary power to deny a litigant the right to offer testimony which reasonably tends to support his theory of the case or disprove the theory of his adversary." The court held that there was no abuse of the trial court's discretion as the testimony offered "would have been negative in character, and was not testimony which would have directly refuted the charges made in the complaint." The court further held that even had the testimony of the witnesses been heard, the result of the trial could not have been different. Respondent also

cites numerous cases in which the trial court was upheld in limiting the number of expert witnesses, character witnesses, witnesses on the question of value, etc. These are well known examples of cases in which trial courts may limit the number of witnesses, sometimes by express statutory authority.

■■ So far as the court's remarks in the Schoblom case might be said by analogy to characterize the excluded testimony in the present case as negative in character, we are unable to give the same our approval. It is inconceivable that conduct such as that ascribed to the defendant in the presence of the relatives, friends and parties at social gatherings over a period of five years—unremitting, consistent, coldly calculated, bringing his wife to tears on numerous occasions—to such extent as to be the subject of comment among his friends, could go so unnoticed in the gatherings described as to characterize the offered testimony of defendant's witnesses to the effect that such things did not take place as negative testimony. One theory of the greater strength of positive testimony over so-called negative testimony is the greater likelihood that the "positive" witnesses saw or heard the things which the "negative" witnesses simply failed to see or hear. The reason for such a rule entirely fails in the light of the circumstances of the present case. The testimony rejected has all of the characteristics of positive testimony. It is indeed "negative" as opposed to the "affirmative" testimony of the plaintiff and her witnesses, but as to the "positive" testimony as to certain occurrences, the rejected testimony was just as "positive" to the effect that they did not occur. See 20 Am.Jur. 1038, nn. 12 and 13, id. 1040, id. 1041. Bearing in mind the discretion accorded to trial courts in limiting the number of expert witnesses, character witnesses and witnesses to analogous subjects and particularly witnesses to collateral facts or issues, we may not lose sight of the fact that the defendant's alleged treatment of his wife in public was one of the

main issues, if not the main issue, tried to the jury. In view of the testimony adduced by the plaintiff, the defendant should have been permitted completely to negative such testimony by the testimony of all of the persons comprising the circle of relatives and friends of the parties during the period of some five years when these events are alleged to have occurred. We can well understand how a harassed and over-burdened trial court with a crowded calendar should feel disposed to limit the number of depositions appearing at first blush to be merely cumulative on a collateral issue with simply negative force, but the exclusion of the evidence was in our opinion distinctly prejudicial to the defendant's case.

■ Respondent's reference to the scholarly discussion of the subject by Professor Wigmore (Wigmore on Evidence, 3d Ed. secs. 1907, 1908) in no way alters the conclusion to which we have come. The well recognized exercise of the trial court's jurisdiction in limiting the number of expert witnesses and character witnesses is referred to. The noted author recognizes, however, that it is not possible to define any other specific classes of witnesses or of facts for which a rule can be laid down, and falls back upon the circumstances of the case as justifying the limiting of testimony. If the reason for resting a wide discretion in the trial court is, as recited by Professor Wigmore, because at times "the disadvantage of confusion preponderates over the testimonial value, little or none, of the additional witnesses," such reason certainly does not apply in the present case. No confusion would have been entailed and the testimonial value might in the minds of the jury have been considerable. This is particularly true in view of the instruction properly given the jury: "As to any offer of evidence that has been rejected by the court, you, of course, must not consider the same; as to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection * * * you should not

consider any evidence offered by either side to which an objection was made and sustained   *   *   *."

Although unnecessary to a decision upon the point discussed, the situation is aggravated by the fact that the plaintiff dismissed her pending action in the State of Texas and the same day left for Nevada and in due time commenced her action for divorce in the courts of this state. This she undoubtedly had a legal right to do in the absence of facts from which a contrary conclusion could be drawn. However, the effect of this course of action upon the defendant was clearly to increase the difficulty of his defense. He was compelled to submit to the district court in Nevada the testimony of some twenty-three witnesses to facts occurring in the State of Texas, and naturally was compelled to take the testimony of these witnesses by deposition. The aggravation is further increased by the very evident fact that the plaintiff is a woman of considerable means while the defendant's means at the time of the trial consisted in the ownership of some seven or eight hundred dollars in cash.

■ Having found error in the exclusion of the offered depositions, we are confronted with another serious question. Although it is claimed by appellant that the exclusion of the additional depositions also deprived him of the right to claim that the testimony of the plaintiff and her witnesses was false and should be entirely rejected by the jury (Zelavin v. Tonopah Belmont Development Co., 39 Nev. 1, 11, 149 P. 188), we are satisfied that upon the issue or count of the defendant's threats of bodily injury, the count of his unreasonable sexual demands, the count growing out of his actions concerning the finances of the parties and the count going to his failure to consult his wife's wishes before having the children baptized in the Catholic church went to the jury without error; that there was a substantial conflict of the evidence on each of these four counts and that this court would not have been disposed to interfere with a

special finding for the plaintiff (or for the defendant) on any one of these four counts—any more than it would have been inclined to interfere with a special finding of the jury for the plaintiff (or for the defendant) on the count as to the defendant's treatment of her in public. The question that presents itself then is whether the general verdict can be sustained in view of the error in excluding the depositions on the count last referred to. This involves a consideration of what has come to be known as "the two issue rule." The extent of conflict in authorities upon the question is indicated by the following statements by the authors of the article on Appeal and Error, 3 Am.Jur. 564, sec. 1009:

"There is a direct conflict in the different jurisdictions upon the question whether error affecting only one of two or more issues is prejudicial. According to one line of authorities, a substantial error affecting any one of such issues or theories in a case in which a general verdict has been rendered will be regarded as prejudicial unless the verdict is so clearly supported by the evidence upon an issue or theory as to which no error occurred that the trial court would have been justified in directing a similar verdict thereon. At least this is true if it is impossible to determine upon which of the issues the verdict was founded. A contrary rule is adhered to in other states. The latter rule is especially applicable where one of two determinative issues in the case is correctly tried. In such a case the trial of one without error obviates the necessity of reversing for error in the other."

And again at sec. 1109 id.:

"As previously pointed out, the cases are conflicting as to the prejudicial character of error which leaves unaffected at least one determinative issue in the case. This conflict exists, also, on the question of instructions. One line of authorities holds that such error is prejudicial, at least if it is impossible to determine upon which of two theories the jury based its verdict. Another line

of authorities hold to the contrary. The latter rule has, however, some limitations."

Respondent contends that as there was substantial evidence upon the count of defendant's threats and upon the count of defendant's unreasonable sexual demands and upon the count of the defendant's attitude and actions in connection with the finances of the parties and in the count of his having his children baptized in the Catholic faith without consulting the wishes of his Protestant wife, and which counts were tried without error, it is immaterial that there may have been error in connection with the count of defendant's treatment of his wife in public. That there is respectable authority to support this view cannot be gainsaid. Reference is made, for example, to Leoni v. Delaney, Cal.App., 179 P.2d 820, 823, decided in May of this year, in which the court said, citing four earlier California cases as authority: "If one count is not affected by error and there is substantial evidence to support a verdict with respect to it, it is immaterial that there may have been errors committed in connection with another count or that there is not sufficient evidence to sustain a verdict as to such other count." Reliance is also placed on Brignoli v. Seaboard Transp. Co., Cal.App., 171 P.2d 518, and upon the other decisions cited in the Leoni and Brignoli cases. While some of these cases are distinguishable, they undoubtedly follow the rule that a general verdict on two or more counts will be sustained although error was committed in the trial of one count. Mundon v. Greenameyer, 44 S.D. 440, 184 N.W. 257, as well as several Ohio, Indiana, Illinois, Alabama and Massachusetts cases likewise support this rule, even though many of the cases are distinguishable. Ohio appears to have been the first or one of the first states to invoke the two issue rule, but the later Ohio cases have clearly limited its application. See Taylor v. City of Cincinnati, 143 Ohio St. 426, 155 A.L.R. 44, 55 N.E.2d 724, 726, in which the court refused to apply the two issue rule in a case where the

defendant claimed that sole negligence on the part of a third person was the proximate cause of plaintiff's injuries. The court said: "A claim on the part of a defendant that plaintiff's injuries were proximately caused by the negligent acts of a person other than the defendant is but another form of a general denial. It does not create a separate issue and does not furnish any basis for the application of the two-issue rule." And in Cincinnati State Railway Co. v. Keehan, 45 Ohio App. 75, 186 N.E. 812, the court held the rule not applicable when the judgment was for the plaintiff, but only where the judgment was for the defendant. See, also, Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851. The cases hereinafter cited uphold the contrary rule, namely, that where two or more material issues are tried and submitted to the jury and the verdict is a general one, it cannot be upheld if there was error as to any one of the two or more issues.. The reasoning of the cases supporting this rule appears to us to be the better logic, and this is well illustrated by the circumstances of the present case.

On the count of the defendant's threats of personal violence to himself and to his wife and to their children the jury might well have come to the conclusion that the threats were not serious, that they were never considered such by the plaintiff, that they were only the plaintiff's own construction of language used by the defendant and that plaintiff had frankly admitted that she was not fearful that the defendant would carry out his threats. On the count of the defendant's unreasonable sexual demands, there was a distinct conflict in the evidence which naturally consisted entirely in the testimony of the two interested parties. The jury could well have come to the conclusion that the defendant's demands for sexual intercourse were entirely normal and reasonable. On the count of the defendant's cruelty by reason of the financial situation the jury would have been justified in concluding that the defendant was not at fault in any of these matters. On the count of his having the

children baptized in the Catholic faith without first consulting his wife, the jury could well have found that the matter was one of entire indifference to her and did not constitute cruelty. On the four counts discussed there was a substantial conflict in the evidence and this court would not have been disposed to interfere with the jury's findings for either party on these four counts, could we know definitely that the jury so found. It is entirely possible, however, that the jury based its verdict entirely upon the defendant's course of treatment of the plaintiff in the presence of their entire circle of family, friends and acquaintances, and that they treated the other four issues discussed above as not of great importance.

█ Our conclusion finds further support in the fact that the case involves but one cause of action, namely, the defendant's cruelty to the plaintiff. However, whether we consider the rule with reference to separate causes of action or with reference to separate issues or with reference to separate counts, the reason for the rule finds application in the present case. Nor may respondent find relief in the fact that appellant did not request special findings on these respective counts. It may rather be said that in the avoidance of possible error in the trial of any of these counts, the respondent should in an exercise of caution have been the one to demand special findings. As said in Sedgwick v. Sedgwick, 50 Colo. 164, 114 P. 488, 489, 490, Ann.Cas.1912C, 653, "counsel in a divorce action upon a number of statutory grounds, before the case goes to the jury, should dismiss on all save such as they desire a verdict. They are taking an unnecessary risk upon a general verdict, where different causes of action are submitted to the jury." While that case involved more than one cause of action, the application of its reasoning to the present case is clear. Be that as it may, the error in excluding the proffered depositions cannot be considered as harmless when, as is the case here, it is impossible to determine on which theory the jury based its verdict.

Stewart v. Newberry, 220 N.Y. 379, 115 N.E. 984, 2 A.L.R. 519; Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392; Mathews v. Livingston, 86 Conn. 263, 85 A. 529, Ann. Cas.1914A, 195; Gambrell v. State, 92 Miss. 728, 46 So. 138, 17 L.R.A.,N.S., 291, 131 Am.St. Rep. 549, 16 Ann.Cas. 147; State of Maryland for the Use of Markley v. Baldwin, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822; Tisdale v. Panhandle & S. F. Ry. Co., Tex. Com.App., 228 S.W. 133, 16 A.L.R. 1264; Noel Construction Co. v. Armored Concrete Construction Co., 120 Md. 237, 87 A. 1049, Ann.Cas. 1915A, 1032; Funk v. St. Paul City Ry. Co., 61 Minn. 435, 63 N.W. 1099, 29 L.R.A. 208, 52 Am.St.Rep. 608; Norfolk & W. Ry. Co. v. Mace, 151 Va. 458, 145 S.E. 362; Southern Casualty Co. v. Hughes, 33 Ariz. 206, 263 P. 584; Goldberg v. Globe & Republic Ins. Co. of America, 193 Minn. 600, 259 N.W. 402; Christian v. Boston & M. R. R., 2 Cir., 109 F.2d 103.

It is only fair to the trial court to say that the record does not disclose that the limitations recognized by the text writers and the decisions on the jurisdiction of trial courts to limit the number of witnesses were presented when the situation arose. In like fairness to counsel for respondent it should be noted that the exclusion of the depositions was not ordered by reason of any objection or motion on their part. The relief afforded by the last session of the legislature in providing another trial judge for the Second judicial district has, we are advised, not yet become effective, and so long as crowded court calendars result in the necessity for hasty trials before overworked judges it is inevitable that error will occur. All points urged by respondent in support of the general verdict and the judgment entered thereon and the court's order denying appellants motion for a new trial have been duly considered, but we are compelled to hold them to be without merit.

The judgment and the order denying a new trial are hereby reversed with costs and the case is remanded for a new trial.