JOE SERPA, JR., AND JOANNE SERPA, HUSBAND AND WIFE, APPELLANTS, *v.* GRACE S. PORTER, FORMERLY KNOWN AS GRACE S. WAYMAN, AKA GRACE A. WAYMAN, RESPONDENT.

No. 4648

February 14, 1964                    389 P.2d 241

[Rehearing denied March 2, 1964]

*Diehl & Recanzone,* of Fallon, for Appellants.

*Sidney W. Robinson,* of Reno, for Respondent.

# OPINION

By the Court, BADT, C. J.:

Serpa and his wife, appellants here, commenced an action against respondent in the court below for the cancellation of a certain lease and option and for damages. The court denied relief to the plaintiffs, and in their appeal from the judgment they assert (1) that the court's written decision (and, we are willing to assume, the court's formal findings based thereon) are contrary to the evidence; and (2) that the court was in error in not permitting the plaintiffs to present certain impeaching evidence.

As to the first assignment, the evidence was directly in conflict, and we are of the opinion that the court's decision and findings are amply supported thereby. As to the second assignment, we hold that even if the impeaching evidence should have been admitted, the error was harmless. We proceed to the facts.

Respondent was the owner of ranch and range lands in Lander County, comprising what was known as the Iowa Canyon Ranch and the Walters Ranch. On November 4, 1960, she executed a lease to the Serpas, with an option to purchase. The term was for two years, commencing November 4, 1960. The total rental comprised $20,000, being $5,000 upon the execution of the lease and $5,000 on each of the dates May 1, 1961, November 4, 1961, and May 1, 1962.

The option was for the purchase of the land and improvements and ranch equipment, etc., for $190,000. The combined lease and option comprises an instrument 16 pages long, with full covenants, but the only provisions involved in the action are the following:

"1.  Possession of the premises is hereby delivered to lessees upon execution of this lease by all parties, subject to the provisions of Paragraph 2, which follows:

"2.  It is understood that the premises are now held by WILLIAM MENDES, under a rental or lease arrangement and that this lease and option is given

subject to the right of possession which said WILLIAM MENDES has. Lessor agrees, however, to have said WILLIAM MENDES removed from said premises within sixty days (60) from the date of execution of this lease and option. It is contemplated that as of the date of this lease and option said WILLIAM MENDES will assert no right to possession to the property known as the WALTERS RANCH and that lessees herein can assume immediate possession thereof."

Plaintiffs' complaint alleged the execution of the lease and option, the payment to defendant of $5,000 and that defendant "contrary to the provisions of paragraph 2 of said lease and option failed and refused to have William Mendes removed" from the premises within 60 days from the date of the execution of said lease and option; that on February 15, 1961, plaintiffs had notified defendant that by reason of such failure they had rescinded the lease and option and had demanded the return of their $5,000 payment.[1] They prayed for judgment for a refund of the $5,000 paid, for damages in the sum of $10,030.72, for an attorney fee, costs and further relief.

Defendant answered, denying any breach, and as an affirmative defense alleged that any possession maintained by Mendes of a portion of the leased property was with the consent and permission of the plaintiffs and in no respect interfered with the general possession of plaintiffs, nor did the same in any respect lessen the value thereof; that plaintiffs by their conduct in permitting Mendes to remain in possession of a portion of said property are estopped to claim a default on the part of the defendant "in connection with the removal of Mendes from the property," and waived any right to require Mendes to be removed therefrom.

As a further defense, defendant alleged that plaintiffs had gone into possession under their lease, put their

---

[1] As a matter of fact the notice did not mention Mendes, but stated that the Serpas elected to rescind "due to your failure to perform your obligation to give possession of the premises leased to Joe and Joanne Serpa within the period of time as designated in your lease and option."

cattle on the land and consumed feed of a value in excess of their $5,000 down payment.

The conflict in the evidence and the manner in which the trial judge resolved it appear from the following excerpts from his written opinion:

"As to the defendants claim that there was some agreement between the plaintiff and Mr. Mendes respecting the use and occupancy of the property during the period between November 4, 1960 and January 4, 1961, we are confronted with a conflict in the evidence and a question as to the credibility of witnesses. The plaintiff vehemently and without equivocation denies that there was any agreement of any sort with Mr. Mendes, yet at the same time he testified that he never disputed with Mr. Mendes about his continued occupancy, nor did he ever ask him to remove himself or his stock from either ranch. In turn, Mr. Mendes outlined to the court in some detail an agreement which he claimed existed between himself and Mr. Serpa relating to the joint operation of the ranch and the running of the cattle belonging to both parties upon that ranch.

"It is difficult for this court to believe that the plaintiff, Mr. Serpa entered upon the Iowa Canyon properties, took possession of the main ranch house, caused Mendes and his family to move to the bunk-house, placed the Serpa cattle on the Iowa Canyon pastures and upon the open range appurtenant to both ranches, permitted his cattle to be worked with the Mendes stock, and did all of the other things that were done, in the absence of some agreement, at least an implied agreement, between the two parties that they should continue to operate the ranches together. * * * As difficult as the ranching conditions were in the late fall and early winter of 1960 and 1961, and as scarce as feed was at that time, it is almost incredible to ask this court to believe that the plaintiff would have continued to maintain his cattle upon these ranches, to occupy them himself, and to permit Mendes and his stock to remain on the same ranches unless there had been some tacit agreement between these two men for some sort of a joint operation. It is noteworthy that during this same time the Serpas were

permitted, by Mr. Mendes, to occupy a great deal of ranch property to which they were not entitled under any conditions unless there was some such agreement. Mendes appeared to be happy and satisfied with the arrangement; he made no effort to evict the Serpas from the property to which he was entitled, and to which the plaintiff had no right under the lease."

The court then concluded that plaintiffs were not deprived of the occupancy or enjoyment of any part of the demised premises through any act or failure to act on the part of defendant, but that any injury to plaintiffs by being deprived of the use of any part of the property arose out of Serpas' agreement with Mendes. The court, accordingly, denied any recovery by plaintiffs and ordered entry of judgment in favor of defendant for costs and an attorney fee.

This case presents another example of a conflict in the testimony of the witnesses which must be resolved by the trier of the facts and in which this court will not interfere. That there is substantial evidence to support the finding can hardly be controverted. Appellants' first assignment of error is without merit.

Appellants' second assignment of error was the trial court's sustaining of respondent's objection to the introduction of testimony for the purpose of impeaching the testimony of the witness William E. Mendes. Plaintiffs' counsel, on cross-examination of defendant's witness Mendes, had asked:

"Q. Do you recall making a statement to a Mr. Donald Bruner while you and he were on the Iowa Canyon Ranch in the month of January of 1961 to the effect that you would not get off the place until such time as you had settled with Mrs. Wayman?

"A. No, I don't remember that.

"Q. Do you think that statement may have been made?

"A. No, I wouldn't say that it had.

"Q. You don't recall making it?

"A. That is right.

"Q. Do you recall during the months of December

and January at various times on the Iowa Canyon Ranch of having made the statement to Josephine Plummer and Marilyn Plummer that you would not get off the ranch until such time as you had settled with Mrs. Wayman?

"A. No, sir.

"Q. You don't recall that?

"A. No, sir.

"Q. Do you recall making a similar statement at similar times and at the same place to Adele Serpa or John Serpa?

"A. No, sir."

The same responses were made to questions on cross-examination whether the witness recalled making a similar statement to Josephine Plummer and to Marilyn Plummer. Plaintiff called Donald Bruner to testify that such statement had been made. Objection was made on the ground that the attempted impeachment was made upon a collateral matter, and the trial court sustained the objection after considerable argument and submission of authorities on that particular ground. Respondent now submits the proposition that the ruling was correct upon the ground that the proper foundation had not been laid for the impeaching testimony. Both propositions have been the subject of long and learned discussions in the texts and extended treatment in many court opinions throughout the United States. A discussion of the subject here would not only fail to add anything to the great body of law on the subject, but is unnecessary to the determination of the case. Such conclusion grows out of the fact that, even assuming that the ruling was in error, the refusal to admit the impeaching testimony was not prejudicial. Appellants were permitted by the court (in fact this was at the suggestion of the court to counsel) to make an offer of proof, and the court well understood that the three impeaching witnesses would testify that both William E. Mendes and his father had made to each of the three witnesses the statements indicated.[2] The father had never

---

[2] See United States v. Borden Co., infra.

been asked the foundation questions. Therefore he could not be impeached.[3] It is conceded by respondent that the statements of the impeaching witnesses were not offered as evidence of the truth of the matter asserted but simply for the purpose of impeaching the veracity or credibility of the testimony of Mendes.

And it must be recalled that the trial was to the court without a jury. The court, with the knowledge of what the impeaching witnesses would testify to (a jury would have no such knowledge), nonetheless, for the reasons outlined in its written decision, not only gave full credence to Mendes' testimony but rejected as incredible the testimony of Serpa.

It is contended that this court in Heinen v. Heinen, 64 Nev. 527, 186 P.2d 770, reversing the trial court because of rejecting the offer of ten depositions, strongly supports the appellant's contention of prejudicial error. That case, however, is distinguishable in several important respects. First, it was a jury trial. Secondly, the rejected depositions went to the main issue in the case, and were offered for the purpose of "fairly meeting the issues raised by the plaintiff." Thirdly, the nature of the depositions aggravated the prejudicial effect of their rejection. The respondent wife's testimony and that of her brother had been to the effect that the defendant was unsympathetic, sarcastic, lacked understanding of his wife, ridiculed her about the children, her cooking, etc., took a superior attitude and seemed to delight in emphasizing her mistakes in front of the family and friends; that the occasions were so numerous as to be impossible of detailing each one separately

---

[3] As a matter of fact the record would indicate that the witness Bruner was possibly not referring at all to a conversation with the witness William E. Mendes, but to Mendes' father, referred to as Old Man Billy, who had never been asked whether he had made the statements indicated above. This is apparent from the testimony of Bruner, who testified as follows:

"Q. And when you were out there, did you visit with the Mendeses as well as the Serpas?

"A. Yes, I did.

"Q. And what Mendeses?

"A. Both of them, but mostly Old Man Billy, as he is called.

"Q. Did Mr. Mendes [Old Man Billy?] ever advise you as to his feeling with respect to his getting off the ranch?

"A. Yes, he did."

as to time, place, or person. They occurred in the presence of both families, at social gatherings, at the homes of mutual friends, and occasional dinners and theatre parties. These occasions would often reduce her to tears. This court considered the proposition that positive testimony was always stronger than negative testimony, and noted that the only way of opposing the positive testimony was by the testimony of witnesses who had observed the husband and wife on occasions throughout their married life in private and public gatherings of friends and relatives and never heard the husband indulge in the conduct complained of. The rejected testimony was positive testimony as distinguished from the impeaching testimony rejected here.

Boyd v. Pernicano, 79 Nev. 356, 385 P.2d 342, which in the face of error by reason of misconduct of counsel, was affirmed because such error was held to be harmless is thought important because of its statement that: "If there appears to be a sharp conflict in the evidence upon essential issues the error is treated as having more significance in the jury's decisional process than if the case is a one-sided affair."

The court then analyzed the testimony as being overwhelmingly in favor of respondent. We may well accept this court's conclusion in Boyd. The court further, however, stated: "[I]t is our duty to search the record as a whole, and exercise a judicial discretion in deciding whether the error is harmless or reversible in nature." We there cited Lee v. Baker, 77 Nev. 462, 366 P.2d 513, where the error was patently prejudicial. The footnote referring to Lee also referred to Pfister v. Shelton, 69 Nev. 309, 250 P.2d 239, also referred to in the text above quoted in Boyd. In Pfister the error was considered harmless because the record did not contain a transcript of the trial from which the court could determine the existence or degree of conflict in the evidence upon essential issues.

We have no quarrel with any of these cases and we frankly recognize the direct conflict involved in this case, but we are still of the opinion that the error, if any, is harmless. Indeed, evidence that William E. Mendes did make the statement contained in the

impeaching question was already before the court. Serpa testified that William E. Mendes had told him many times "that they weren't leaving until they had been taken care of to their satisfaction so far as their lease went."

In United States v. Borden Co., 347 U.S. 514, 74 S. Ct. 703, 98 L.Ed. 903, the trial court refused to allow the government to use for impeachment of a hostile witness a deposition taken in another case; to introduce in evidence certain tape recordings made for use in the prior case; and to introduce testimony as to a conversation with a deceased agent of one of the defendants. Although these rulings were held to be error, the United States Supreme Court held that they were harmless under F.R.Civ.P. 61. It made such ruling after considering the record, *including the government's offers of proof*, as in the instant case, and concluded: "[I]t does not appear that admission of the evidence in question would have been sufficient to change the conclusion that the government had not established a case under the Sherman Act; hence the rulings cannot be said to have affected the substantial rights of the parties within the meaning of [F.R.Civ.P. 61]."

In Century Indemnity Co. v. Davidson Transfer & Stor. Co., 2 Cir., 261 F.2d 690, it was held to be error but not prejudicial to exclude a statement signed by a witness four weeks after the accident, at the time of said action some eight years later. The court said: "Ordinarily this error would seem so substantial as to require reversal * * *. But a review of the record leads us to the conclusion that on the facts of this case the error was harmless and does not require reversal. Rule 61 Federal Rules of Civil Procedure. The tenor of both the statement and [the witness'] testimony was the same—namely, that the accident was unavoidable."

Perhaps the most convincing reason for concluding that the exclusion of the impeaching testimony was not prejudicial, and that it would not have changed the result if admitted is the indisputable fact that the trial judge came to his conclusion *because he rejected the testimony of Serpa as incredible*. This is abundantly evident from the excerpts from his opinion quoted above.

We are satisfied that, if the rejection of the impeaching testimony was error, it was not prejudicial, and that appellants' contention that it requires a reversal and a remand for new trial is without merit.[4]

It should be unnecessary to add that in holding that the rejection of the proffered impeaching testimony was harmless and not cause for reversal under NRCP 61, we do so after searching the entire record and under the particular circumstances of this case.[5] As stated in 7 Moore, Federal Practice ¶ 61.07[2] (2d ed.), at 1021:

"Questions as to whether error in the exclusion of evidence in jury cases is harmless or prejudicial must also be solved by determining whether substantial rights of the parties have been violated, which in turn depends upon the circumstances of each case. Thus the exclusion of evidence as to a fact which has been adequately established by other evidence is harmless error. * * *"

There was no motion for a new trial and the appeal is only from "the decision and judgment."

The judgment is affirmed with costs.

McNAMEE, J., concurs.

THOMPSON, J., dissenting:

The true holding of the majority opinion is that the

---

[4] Rule 61 NRCP. "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

[5] Cf. (American) Lumbermens Mut. Cas. Co. v. Timms & Howard, 2 Cir., 108 F.2d 497, 504, in which the court said:

"Under all the circumstances we think it is doubtful if the plaintiff suffered harm by what transpired. We are admonished not to reverse for an error in the exclusion of evidence, unless refusal to do so appears to be 'inconsistent with substantial justice.' Federal Rule 61, 28 U.S.C.A. following section 723c; 28 U.S.C.A. § 391; Equity Rule 46, 28 U.S.C.A. following section 723. It is significant that the judge, who took the full responsibility of decision, notwithstanding the presence of the jury, reached the same result. Exclusion of evidence before an advisory jury when it also means an exclusion from its consideration by the judge may be ground for reversal, * * * but not where he had had the full force of the evidence, as here."

harmless error technique may be used to place the appellate stamp of approval on a trial court ruling which denies a plaintiff his right to present material impeaching testimony in rebuttal.[1]

To correctly evaluate the holding, one first must know what this case does not involve. It has nothing whatever to do with the power of a trial court to limit the number of witnesses that may be called to testify upon a particular issue. Annots., 21 A.L.R. 335; 48 A.L.R. 947. Here, plaintiff's counsel represented to the court that he had three rebuttal witnesses to present. Each would contradict or impeach testimony given by William Mendes relevant to the heart of the controversy. Not one of them was heard!

Nor does this appeal involve the case made distinction between a court trial and a jury trial as to evidence offered *and received.* If a court trial, the improper reception of incompetent evidence may be deemed harmless if there exists competent evidence to support the result. Duplantis v. Duplantis, 50 Nev. 234, 255 P. 1014; Rehling v. Brainard, 38 Nev. 16, 144 P. 167. If a jury trial, the improper reception of evidence relating to an issue in the case, will probably be considered prejudicial. McLeod v. Miller & Lux, 40 Nev. 447, 153 P. 566, 167 P. 27; Mikulich v. Carner, 69 Nev. 50, 240 P.2d 873, 38 A.L.R.2d 1; Las Vegas Sun v. Franklin, 74 Nev. 282, 329 P.2d 867. The fact that this case was a court trial without a jury has no weight or significance in testing the magnitude of the mistake made. The requirement of a fair trial is always present, whether the dispute is presented for resolution to court or jury. In either instance, a party must be given the opportunity to put

---

[1]The objection made at trial to the impeaching testimony was that it dealt with a "collateral" matter. That objection was unfounded for the reasons expressed in the opinion. On appeal, counsel sought to sustain the trial court exclusionary ruling on the ground that a proper foundation had not been laid for impeachment of the witness Mendes. The interrogation of Mendes was sufficiently clear as to (time, place, persons present) the foundation necessary to pave the way for impeaching rebuttal testimony. Reno Mill Co. v. Westerfield, 26 Nev. 332, 67 P. 961, 69 P. 899; State v. Kuhl, 42 Nev. 185, 175 P. 190, 3 A.L.R. 1694; cf. Duran v. Mueller, 79 Nev. 453, 386 P.2d 733.

on his case. Yet, the majority opinion states, "And it must be recalled that the trial was to a court without a jury." Does this mean that one's right to present his case is somehow restricted or diminished if a court is to be the arbiter rather than a jury? It seems so. I submit that such a concept is foreign to the administration of justice in this country. Nor does the trial court's knowledge of what the impeaching witnesses would say change the picture.[2] No judge has the capacity to determine the credibility and integrity of witnesses by listening to counsel's offer of proof. The witnesses must be seen and heard before the court can choose sides on the issue of credibility. The majority treat impeaching evidence as "second class" matter.[3] This, too, is a novel thought. The trial of a case is a search for truth. Both substantive and impeaching evidence are indispensable in that pursuit.

Finally, it seems to me that the "harmless error" rule (NRCP 61) does not embrace the issue on this appeal. Before today, every guide announced by this court would demand that the mistake we are reviewing be deemed prejudicial. Indeed, the author of the majority opinion also wrote Heinen v. Heinen, 64 Nev. 527, 186 P.2d 770, wherein prejudicial error was found when the lower court precluded a party from introducing into evidence the depositions of ten witnesses which were relevant to the main issue in the case. Heinen was decided by a jury. This is a distinction without a difference. The basic theme underlying the ruling is that of a fair trial.

It is especially true that an error will be treated as having more significance if there is a sharp conflict in the evidence. (See Boyd v. Pernicano, 79 Nev. 356, 385 P.2d 342, comparing the situation there considered with

---

[2]The majority opinion states that the court, with knowledge of what the impeaching witnesses would testify to, nonetheless, for the reasons outlined in its written decision, gave full credence to Mendes' testimony.

[3]The opinion says that it will be recognized, of course, that the statements of the impeaching witnesses were not offered as [substantive] evidence but simply for the purpose of impeaching the veracity or credibility of the testimony of Mendes.

other Nevada cases wherein there was a sharp conflict in the evidence.) In the present case two opposite tales were told about the only fact that really made a difference. The court had to accept one and reject the other. The credibility of witnesses became the consideration upon which the case would turn. The majority opinion acknowledges that this case "presents another example of a conflict in the testimony of the witnesses which must be resolved by the trier of the facts." Without question the significance of the error is enlarged in such circumstances and must be evaluated accordingly. That there exists substantial evidence to support the result, is an irrelevancy on this appeal.[4] I presume that there may be substantial evidence upon which to base a decision, even though a trial court would allow an aggrieved party to present only half of his case or even less.

This appeal does not involve any of the considerations which I have just discussed (power to limit witnesses; trial before a court rather than a jury; harmless error; substantial evidence). However, it does involve fundamental fairness in the handling of a law suit. The glaring facts of this case are these. William Mendes had leased the ranch properties from the defendant and was in lawful possession when, on November 4, 1960, the defendant leased the same ranch properties to the plaintiff. The subsequent lease required the defendant "to have William Mendes removed from said premises within sixty days (60) from the date of execution of this lease and option." Of course, the purpose of that provision was to assure the plaintiff (subsequent lessee) that his right to the possession of the ranch as of January 4, 1961, was real and not fictitious. The existing lease to Mendes had to be terminated to accomplish this. Without the abolition of Mendes' prior and primary right to possession, the subsequent lease was ineffective to transfer possession to the plaintiff. The lease to Mendes was not terminated within 60 days. Mendes and his

---

[4] I mention this because the majority opinion seems to pay some attention to the "substantial evidence" doctrine.

cattle remained on the ranch thereafter. When the plaintiff sought to rescind the subsequent lease because the defendant had not terminated the prior lease to Mendes, the defense was made that Mendes was on the property because of an agreement that he (Mendes) had made with the plaintiff. The entire case turned upon the validity of that defense. There was a direct conflict in the evidence as to whether Mendes remained beyond the 60-day period because of an understanding with the plaintiff that he could do so, or whether his presence there was because he and the defendant had not been able to agree upon terms to end his tenancy. The plaintiff denied the existence of an understanding with Mendes. Mendes testified that he and the plaintiff had made an agreement for the joint operation of the ranch. The three rebuttal witnesses that the plaintiff sought to present would (according to counsel's offer of proof) have impeached Mendes by relating inconsistent statements which Mendes had made to them.[5] The precluded evidence would have shown, or at least tended to establish, that Mendes was on the ranch after the 60-day period because he had not made a deal with the defendant to terminate his lease, and not because of any agreement with the plaintiff that he could remain—thereby casting doubt upon the credibility to be given Mendes' contrary testimony at the trial. Had the evidence been received, perhaps the result of the case would have been the same. The majority suggests that this is so. But the trial result may have been altered. We do not know. However, it seems to me true that neither a trial court, nor this court, may properly speculate on the subject when it is clear that one party to a lawsuit has been denied his right to put on a case—a fair trial—his day in court.

---

[5]The evidence was not admissible on plaintiff's case in chief because of the hearsay rule. Mendes was not a party to the suit, only a witness. However, Mendes did testify for the defendant. Therefore, prior inconsistent statements made by him to others, and material to an issue, became admissible for impeachment purposes. Ewing v. United States, U.S.App.D.C. 14, 135 F.2d 633, 640; State v. Kuhl, 42 Nev. 185, 175 P. 190, 3 A.L.R. 1694.

When this happens, another trial is needed. A guessing game as to the effect of the error seems out of place. I dissent.