ROBERT A. PIERCE CO., A NEVADA CORPORATION, APPELLANT, *v.* SHERMAN GARDENS COMPANY, A COPARTNERSHIP CONSISTING OF ROBERT J. GORDON AND DICK Y. NAKAMURA; FIREMAN'S FUND INSURANCE COMPANY, A CALIFORNIA CORPORATION; AND ALLIED CORPORATION, A NEVADA CORPORATION, RESPONDENTS.

No. 5013

November 4, 1966             419 P.2d 781

*Morton Galane,* of Las Vegas, for Appellant.

*Foley Brothers,* of Las Vegas, for Respondents Sherman Gardens Co. and Fireman's Fund Ins. Co.

## OPINION

By the Court, THOMPSON, J.:

This is a lien foreclosure action brought by Robert A. Pierce Co., a Nevada corporation, to recover $45,374.34 claimed to be due for labor and materials supplied by it as a lathing subcontractor on the apartment house project of Sherman Gardens Company, owner. The plaintiff lost below. In order to place the main appellate issue in focus, we need only recite that the Pierce Company was paid $20,000 which the court found should have been applied to the Sherman Gardens job, but which Pierce Company fraudulently credited to other accounts. Accordingly, that court concluded that the lien rights of the Pierce Company were lost, and entered

judgment for the defendants Sherman Gardens Company and Fireman's Fund Insurance Company.[1] The findings of the trial court are not challenged. The appellant Pierce Company admits that the findings and judgment are supported by substantial evidence. Notwithstanding this admission, the appellant contends that the trial was blemished with prejudicial error because the court refused to listen to certain offered rebuttal testimony which was relevant to the issue of fraud.

1. It is not necessary to recite in detail all evidence received on the issue of fraud. The court stated flatly in its findings of fact that it accepted the testimony of Mr. Geddie and Mr. Daball. Mr. Geddie was the office manager of Allied, and Mr. Daball its president. Their testimony was that Mr. Kibby, the superintendent of Pierce Co., knew the source of the $20,000 check which was delivered to him, and knew that it was to be credited to the Sherman Gardens job and not to other jobs on which Pierce Company was the lathing subcontractor for Allied. Their testimony was denied by Mr. and Mrs. Kibby and Jack Pierce, all in responsible positions with the Pierce Company. The $20,000 check bore no legend as to how it was to be credited. Thus, the evidence on this narrow issue was in sharp conflict. The credibility of the witnesses became a controlling factor for the trial judge. It is within this framework that we must evaluate the importance of the court's refusal to listen to certain offered rebuttal testimony.

About one month after the $20,000 check was delivered to Pierce Company (and by it applied to accounts other than Sherman Gardens), a meeting was held at the Nevada State Bank. Mr. Humm of the bank, Pierce, Kibby, Daball, Geddie and Mr. Louis Kaminar, attorney for Pierce Company, were in attendance. Daball and

---

[1]Fireman's Fund was joined as a defendant because it gave bond to discharge the lien of Pierce Company. Allied Corporation, with whom the Pierce Company made its subcontract, was also a defendant and, though served with process, did not appear and defend. Following the judgment for Sherman Gardens and Fireman's Fund, plaintiff secured a default judgment against Allied for $25,374.34.

Geddie, defense witnesses, were allowed to testify about the conversations that occurred at that meeting. Notwithstanding, the court refused to hear testimony from Kaminar, Kibby and Pierce, plaintiff's witnesses, upon the same subject. Kaminar would have testified (according to counsel's offer of proof) that, at the bank meeting, Geddie and Daball each said that $45,374.34 was the correct sum owing Pierce Company on the Sherman Gardens job. An offer of proof of the testimony of Pierce about the same meeting was not allowed, the court stating: "No, I have denied your right to complete your offer of proof." Though an offer of proof was not made with respect to the testimony of Kibby, preliminary questions in the record show that his testimony also would have concerned the bank meeting.

The exclusionary ruling below rested on the notion that the statements of Geddie and Daball (representatives of Allied) at that meeting could not bind Sherman Gardens, the owner of the property liened by Pierce Company and were hearsay as to Sherman Gardens. Though a statement by the contractor as to the amount due a subcontractor does not bind the owner, it does not follow that the statement is inadmissible in a lien foreclosure case. It still may be some evidence of the reasonableness of the claim submitted, Stardust, Inc. v. Desert York Company, 78 Nev. 91, 369 P.2d 444 (1962), and where, as here, fraud is an issue, the statement may possess particular relevance. Geddie and Daball of Allied had testified that Pierce Company knew the source of the $20,000 check and knew that it was to be credited to the Sherman Gardens job. Yet (according to the offer of proof) one month later Geddie and Daball each admitted that Allied owed Pierce Company $45,351.94, thereby indicating knowledge that the $20,000 previously paid Pierce Company was properly applied to other accounts on which Pierce was a subcontractor for Allied. That evidence was erroneously excluded. The statements said to have been made by Geddie and Daball

were not offered to prove that the statements were true but as tending to show the state of mind of the declarants. Evidence of this kind is not objectionable as hearsay. Frank v. United States, 220 F.2d 559 (10th Cir. 1955); Buchanan v. United States, 233 F. 257 (8th Cir. 1916); Wigmore on Evidence, 3d ed. § 1789. Where intent to defraud is in issue, conversations with third persons, or statements made by them, tending to negate an intent to defraud on the part of the party whose motive is material, are admissible. Miller v. United States, 120 F.2d 968 (10th Cir. 1941); Bernstein v. United States, 256 F.2d 704 (10th Cir. 1958); United States v. Shavin, 287 F.2d 647 (7th Cir. 1961).

2. As the trial progressed it became evident that the central issue was fraud. NRS 108.100(1) provides, in substance, that a claimant's lien rights may be lost if the variance between the lien and the proof "shall result from fraud."[2] Fraud is an affirmative defense (NRCP 8(c)) and the burden falls upon the party asserting that defense to prove it by clear and convincing evidence. Callahan v. Chatsworth Park, Inc., 204 Cal.App.2d 597, 22 Cal. 606 (1962); Distefano v. Hall, 218 Cal.App.2d 657, 32 Cal. 770 (1963); Wand Corp. v. San Gabriel Valley Lumber Co., 236 Cal.App.2d 855, 46 Cal. 486 (1965). The trial court found fraud—that Pierce Company had intentionally and fraudulently overstated its lien claim by $20,000—and denied foreclosure. In doing so, it failed to hear all relevant evidence offered on that issue. The evidence which was allowed was in sharp conflict. When the evidence is split and the case is close, it is likely that the result would be sensitive to the

---

[2] NRS 108.100(1) reads: "Upon the trial of any action or suit to foreclose such lien no variance between the lien and the proof shall defeat the lien or be deemed material unless the same shall result from fraud or be made intentionally, or shall have misled the adverse party to his prejudice, but in all cases of immaterial variance the claim of lien may be amended, by amendment duly recorded, to conform to the proof."

excluded testimony. In this setting the rule of harmless error is inoperative.[3]

It is suggested that the majority opinion in Serpa v. Porter, 80 Nev. 60, 389 P.2d 241 (1964), is contra. The court held that an exclusionary ruling on evidence was harmless. The exclusion occurred because the trial judge believed that the offered testimony was "incredible." The opposite appears in the record now before us. When the trial judge refused to receive the testimony of Kaminar he stated: "I don't want to hear it. It might influence my decision in the matter." The rationale of the dissenting opinion in Serpa v. Porter, supra, has application to this case. It is not necessary to consider other assigned errors relating to rulings on evidence.

3. A remaining assignment of error requires comment. After litigation was commenced, but before trial, Pierce Company was dissolved. The court was not advised, nor were the defendants aware, of the dissolution. After trial and judgment the defendants learned of it, filed a "suggestion of corporate dissolution" in the record of this case (NRS 78.615),[4] and requested the appointment of a receiver. By express language, that statute applies to suits against the dissolved corporation.

---

[3]NRCP 61 provides: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

[4]NRS 78.615 provides: "If any corporation organized under this chapter becomes dissolved by the expiration of its charter or otherwise, before final judgment obtained in any action pending or commenced in any court of record of this state against the corporation, the action shall not abate by reason thereof, but the dissolution of the corporation being suggested upon the record, and the names of the trustees or receivers of the corporation being entered upon the record, and notice thereof served upon the trustees or receivers, or if such service be impracticable upon the counsel of record in such case, the action shall proceed to final judgment against the trustees or receivers by the name of the corporation."

Here the dissolved corporation was plaintiff. Upon dissolution, Pierce Company should have requested the court to continue the directors as trustees or appoint a receiver to complete the litigation as provided for by NRS 78.590 and 78.600.[5] However, when the defendants requested the appointment of a receiver after judgment, the court invited the representatives of Pierce Company to nominate a receiver stating that the nomination

[5]NRS 78.590 reads: "1. Upon the dissolution of any corporation under the provisions of NRS 78.580, or upon the expiration of the period of its corporate existence, limited by its certificate or articles of incorporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property, real and personal, and divide the moneys and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations.

"2. After paying or adequately providing for the liabilities and obligations of the corporation, the trustees, with the written consent of stockholders holding stock in the corporation entitling them to exercise at least a majority of the voting power, may sell the remaining assets or any part thereof to a corporation organized under the laws of this or any other state, and take in payment therefor the stock or bonds, or both, of such corporation and distribute them among the stockholders, in proportion to their interest therein. No such sale shall be valid as against any stockholder, who, within 30 days after the mailing of notice to him of such sale, shall apply to the district court for an appraisal of the value of his interest in the assets so sold, and unless within 30 days after the appraisal shall have been confirmed by the court the stockholders consenting to the sale, or some of them, shall pay to the objecting stockholder or deposit for his account, in the manner directed by the court, the amount of the appraisal. Upon the payment or deposit the interest of the objecting stockholder shall vest in the person or persons making the payment or deposit."

NRS 78.600 reads: "When any corporation organized under this chapter shall be dissolved or cease to exist in any manner whatever, the district court, on application of any creditor or stockholder of the corporation, at any time, may either continue the directors trustees as provided in NRS 78.590, or appoint one or more persons to be receivers of and for the corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the district court shall think necessary for the purposes aforesaid."

would be honored. They declined that invitation. Thereafter the court appointed Don R. Beagle receiver, from which order Pierce Company has appealed. In these circumstances we fined no error. The plaintiff should have acted pursuant to NRS 78.590 or 78.600 upon dissolution. It did not. Later, when invited to nominate a receiver, it refused. Someone has to represent the dissolved corporation in this litigation, so the lower court took the matter into its own hands and appointed that person. This claim of error is without merit.

The judgment for the defendants Sherman Gardens and Fireman's Fund is reversed. The order appointing Don R. Beagle, receiver, is affirmed. The case is remanded for a new trial in the name of Don R. Beagle, receiver for Robert A. Pierce Co., a dissolved Nevada corporation.

COLLINS, J., and ZENOFF, D. J., concur.