## BAILEY Et Al. *v.* NEAGLE Et Al.

No. 2980

August 6, 1932.                    13 P. (2d) 634.

*Ham & Taylor,* for Appellants:

*H. N. Gambill,* for Respondent:

## OPINION

By the Court, COLEMAN, C. J.:

This action was brought to recover money alleged to have been paid by plaintiffs on two notes on which it is

claimed they became liable as accommodation comakers, and for which they received no consideration. Judgment was rendered in favor of plaintiffs upon both causes of action. The defendants have appealed from the order denying a motion for a new trial and from the judgment.

The parties will be referred to as plaintiffs and defendants, as they were entitled in the lower court.

William Neagle having failed to answer, his default was entered. Le Roy Neagle filed an answer in due time, denying, among other things, that the plaintiffs were accommodation signers on the notes, as alleged.

The evidence shows: That on November 5, 1931, Claude F. Bailey, Le Roy Neagle, and William Neagle executed a joint and several note to the First State Bank of Las Vegas, Nevada, in the sum of $250, payable ninety days after date. That on January 13, 1931, a note payable to said bank in the sum of $500 was executed, which reads in part as follows: "In installments as herein stated, for value received, Claude F. Bailey and Elizabeth Bailey, his wife promise to pay * * * "— which was signed at the bottom of the note as follows:

"Claude F. Bailey
"Elizabeth Bailey."

On the back of the note is the following indorsement:

"For value received I hereby guarantee payment of the within note, and waive demand and notice of protest on same when due.

"William Neagle
"Le Roy Neagle
"Wm. May"

The $500 note by its terms was payable in $50 monthly installments. The first payment fell due February 13, 1931.

It appears from the bill of exceptions that the plaintiffs testified that the defendant agreed to pay both notes when they fell due. This testimony was objected to upon the usual grounds of irrelevancy, and upon the further ground that such testimony could only serve to alter and vary the terms of written instruments, and

because all of the agreements had been merged into the notes.

The defendants testified that there were no agreements other than expressed in the notes themselves.

It appears from the indorsements on the $250 note that on and prior to February 28, 1931, defendants made certain payments thereon, which left a balance of $58.

On the $500 note are indorsements of payments by defendants as follows: February 17, 1931, Roy Neagle, $4.20 interest and $25 principal; February 18, 1931, by Wm. Neagle, $22.50 principal; June 3, 1931, Wm. Neagle, $7.30 interest.

The defendants testified that the payments made by them and credited on the $500 note was intended to be applied on the $250 note, which it is insisted would have extinguished it. There is some other evidence in the record which is not material to the determination of this case.

■ It is a rule of law so well recognized that we should not find it necessary to cite an authority to the point that, where two or more obligations are held by an individual against another, the debtor making a payment and desiring that it apply upon a particular one of the obligations must direct to which obligation the payment must be applied (see 48 C. J. 646); otherwise the creditor may apply it as he chooses. The first payment on the $500 note was past due when the payments of February 17th and 18th were made, and, no direction having been given as to how they should be credited, the bank could use its option in the matter.

Counsel for the plaintiffs rely upon a portion of the rule stated in 10 R. C. L. p. 1048, sec. 241, and in 3 R. C. L. p. 1122, sec. 338. The portion of the text quoted from 10 R. C. L. reads as follows: "While the cases are not harmonious, the prevailing view is that the true relation of parties to a negotiable instrument, may, as between themselves, be proved by parol whenever it is necessary to a correct determination of the right or liability of either of them thereon."

The portion of the text quoted from 3 R. C. L. reads

as follows: "The payee is named in the body of the note, the makers sign it upon its face below the body of the instrument, and the indorser or guarantor signs his or her name upon the back. But the extent of the obligations assumed in and by promissory notes ought to be determined between the parties contracting, as in other contracts, by the intention of the parties rather than by the particular place where one of the parties has placed his signature."

It is too plain for words that counsel did not read far enough in considering these sections. A reading of the entire sections mentioned clearly shows that it was merely sought to state the rule to be that, in an action between the parties to negotiable instruments, oral evidence is admissible to prove an agreement between them different from that indicated by the relative position of their signatures, and nothing more. The question of varying the terms of a written guaranty is not treated in those sections.

That the publisher had nothing else in mind is to·be readily seen by the following language in 10 R. C. L. p. 1048: "There has been much difference of opinion as to whether the contract implied from the indorsement of a negotiable instrument may be varied by proof of a special agreement. So there is a direct conflict of authority as to whether the liability intended to be assumed by a stranger to a promissory note, who places his name on the back of it, may be shown by parol."

We do not wish to be understood as accepting the rule stated in 10 R. C. L., referred to, but simply to state that, even if conceded to be correct, it does not apply to the situation in hand.

■ That a written guaranty on the back of a note cannot be varied is too well recognized to need citation of authorities; however, we call attention to the following:

In 3 R. C. L. p. 1123, it is said: "If there is anything to be found in the writing itself that indicates what the particular relation is that the party intends to assume

to the note, then parol evidence is not admissible to vary such relation."

In the same work, at page 1060, 12 R. C. L., after considering the inferences to be drawn from the appearance of a signature on the back of a note, it is said: "But, whatever may be the legal effect of one's irregular signature on the back of a negotiable instrument, it is clear that if he writes above his signature words to the effect that he guarantees the payment of the instrument, it cannot be afterwards claimed that his rights and liabilities are not those of a guarantor."

The rule is correctly stated in 22 C. J. p. 1112, as follows: "A written undertaking of guaranty or suretyship cannot be varied by parol or extrinsic evidence; but such evidence may be received to apply a guaranty to its subject matter." See the same volume, page 1254, sec. 1669.

Dean Wigmore, in his excellent work on Evidence, in considering the rule as applicable to negotiable instruments, holds that, as regards the expressed terms of the obligation, no extrinsic agreement can be availed of to avoid their enforcement. 5 Wigmore on Evidence (2d ed.) p. 337. See, also, Ann. Cas. 1912A, note, page 781.

It follows from what we have said that the court erred in receiving parol testimony to vary the terms of the written guaranty.

It is ordered that the judgment against Le Roy Neagle be modified in accordance with the views herein expressed, and, as so modified, that the judgment be affirmed; Le Roy Neagle to recover his costs.

ON PETITION FOR REHEARING
November 4, 1932.

*Per Curiam:*

Rehearing denied.