SHERMAN GARDENS COMPANY, A COPARTNERSHIP CONSISTING OF ROBERT J. GORDON AND DICK Y. NAKAMURA, AND FIREMAN'S FUND INSURANCE COMPANY, A CALIFORNIA CORPORATION, APPELLANTS AND CROSS–RESPONDENTS, v. TED CONNER LONG–LEY, AS RECEIVER OF ROBERT A. PIERCE CO., A DISSOLVED NEVADA CORPORATION, RESPONDENT AND CROSS–APPELLANT.

No. 6485

December 1, 1971                    491 P.2d 48

[Rehearing denied January 7, 1972]

*Morse, Foley & Wadsworth,* of Las Vegas, for Appellants and Cross-Respondents.

*Morton Galane,* of Las Vegas, for Respondent and Cross-Appellant.

## OPINION

By the Court, GANG, D. J.:

This is an action to foreclose a mechanic's lien and is before this Court for the second time. In the first trial, the lower court rendered a judgment for the owner and others, and the subcontractor appealed. We reversed and remanded for a new trial based upon the lower court's error in excluding evidence. Upon retrial, the lower court found for the subcontractor and awarded judgment in the following amounts: $40,630 on the subcontract, $4,744.34 for extras, $20,499.43 interest from February 4, 1963, at 7 percent, and $8,300 attorneys' fees. A motion for a new trial and to amend the findings of fact and conclusions of law followed, resulting in the lower court's deleting $20,000 from the judgment and proportionately reducing the interest, upon the theory that the "law of the case" of our first holding demanded such a ruling.

Factually, the case is not difficult to present. In 1962, Robert J. Gordon was a partner in Sherman Gardens Co., and was the principal stockholder in Robert J. Gordon Construction Co., which had the contract with Sherman Gardens Co. for the construction of apartments. Robert J. Gordon Construction Co. granted a subcontract to Allied Corporation for lathing and plastering. Allied Corporation had a sub-subcontract with Robert A. Pierce Co., which was to perform the lathing portion of the work. Robert A. Pierce Co. performed

work for Allied Corporation, on jobs of Allied, other than just the Sherman Gardens job. Throughout this opinion, the sub-subcontractor (respondent herein) will be referred to as Pierce, and the owner (appellant herein) will be referred to as Sherman Gardens.

On February 20, 1963, Allied received a progress payment of $47,500 from Robert J. Gordon Construction Co. Allied in turn paid Pierce $20,000 from these funds. The record clearly reflects that the source of the $20,000 payment from Allied to Pierce was from Sherman Gardens; this is undisputed at this time by Pierce. At the time of the payment, Pierce claimed not to have had knowledge as to the source of the $20,000 payment.

Pierce credited the $20,000 payment to jobs of Allied upon which it was performing work, other than the Sherman Gardens apartments. Allied ran into financial difficulty and, on May 1, 1963, Pierce perfected its mechanic's lien in the amount of $45,374.24 on the owner's property, to wit, Sherman Gardens. Thereafter, Fireman's Fund Insurance Company posted a security bond in substitution of the lien. Suit was filed on October 28, 1963. Allied failed to answer the complaint, and a default judgment was entered on July 30, 1965. Since the plaintiff was a dissolved Nevada corporation (it was dissolved one month prior to suit being filed), the lower court appointed a receiver to continue the litigation. This appointment was affirmed by us in the first appeal of the lawsuit. Robert A. Pierce Co. v. Sherman Gardens, 82 Nev. 395, 419 P.2d 781 (1966).

Sherman Gardens appeals from the second trial of this case, claiming that the lower court erred in entering judgment for any amount in favor of Pierce, since Pierce intentionally, and with intent to defraud, materially overstated its lien. Pierce cross-appealed claiming that the lower court erred when it reduced the judgment by $20,000 and reduced the interest correspondingly.

## THE APPEAL

Appellant, Sherman Gardens Co., et al., specifies five issues to be decided by this Court:

(a) Although the evidence is in conflict, is the evidence sufficient to show that plaintiff has intentionally overstated the amount of the lien in a material amount to vitiate the lien?

(b) Does the evidence support the allowance of $4,744.34 in extras?

(c) Was the action properly commenced by plaintiff in that prior to commencing the action plaintiff was voluntarily dissolved?

(d) Was the bond (of the surety company), exonerated by the judgment filed July 16, 1965, in any manner reinstated in the absence of posting of a supersedeas bond by the plaintiff in the first appeal?

(e) Does the offer to settle the litigation for a sum in excess of the principal amount of the judgment subsequently entered negate a right to interest and attorneys' fees on the principal amount due and owing?

The appellant, Sherman Gardens, acknowledges that the evidence is in conflict, but argues that the evidence is sufficient to show that plaintiff has intentionally overstated the amount of the lien. The lower court did not so find. If this had been true, then, pursuant to NRS 108.100(1),[1] the lien could have been defeated in its entirety. We have held in the past, and reemphasize in this case by this decision, that we will not disturb findings of a trial court where the evidence is conflicting. See Allen v. Webb, 87 Nev. 261, 485 P.2d 677 (1971). The trier of the fact judges the credibility of the witness, and the findings of fact will not be set aside unless they are clearly erroneous. NRCP 52(a); McMillan v. Torre, 84 Nev. 556, 445 P.2d 160 (1968). The lower court's finding that Pierce did not intentionally overstate its lien is supported by the evidence, and is not clearly erroneous.

Appellant's second claim of error is also without merit. Evidence in the record clearly supports the lower court's determination of the sum due for extras.

Appellant's claim that the action was improperly commenced, since the corporation was dissolved prior to the first trial of the action, cannot be raised at this late date. Our decision in Robert Pierce Co. v. Sherman Gardens, supra, specifically affirmed the appointment by the lower court of a receiver to continue the action.[2] Included in that determination

---

[1]NRS 108.100(1) was amended in 1965. It is now NRS 108.229(1). The substance of the statute remains unchanged and is as follows:

"Upon the trial of any action or suit to foreclose such lien, no variance between the lien and the proof shall defeat the lien or be deemed material unless the same results from fraud or is made intentionally, or has misled the adverse party to his prejudice, but in all cases of immaterial variance the claim of lien may be amended, by amendment duly recorded, to conform to the proof."

[2]NRS 78.585(1) specifically authorizes the continuation of a dissolved corporation for purposes of prosecuting and defending lawsuits:

"All corporations, whether they expire by their own limitation, or

is the necessary finding that the action was properly before the Court on the first trial.

After a case is remanded, the Court on the second appeal will not consider those questions adjudicated on the first appeal.

"The decision (on the first appeal) is the law of the case, not only binding on the parties and their privies, but on the court below and on this court itself. A ruling of an appellate court upon a point distinctly made upon a previous appeal is, in all subsequent proceedings in the same case upon substantially the same facts, a final adjudication, from the consequences of which the court cannot depart. The supreme court has no power to review its own judgments in the same case, except upon petition for rehearing, in accordance with the rules established for the purpose." Wright v. Carson Water Co., 22 Nev. 304, 308, 39 P. 872, 873–874 (1895).

Appellant's claim that the surety bond, which was posted to discharge the lien, was exhausted because Robert Pierce Co. failed to post a supersedeas bond after losing the first trial and appealing, is without merit. Robert A. Pierce Co. lost the first trial. Judgment was entered entitling it to "no recovery" and awarding costs and attorneys' fees to Sherman Gardens, the appellant herein. Pierce posted a supersedeas bond to stay enforcement of the award of costs and attorneys' fees against it. NRCP, Rule 62, provides that the giving of a supersedeas bond stays proceedings to enforce a judgment. The purpose of a supersedeas bond is to stay the enforcement of a judgment. NRCP, Rule 73(d); Malo v. Anderson, 454 P.2d 828 (Wash. 1969); Caplow v. Dist. Court, 72 Nev. 265, 302 P.2d 755 (1956). It is indeed unique to argue that the loser in a trial (plaintiff below) must post a supersedeas bond on the appeal in order to stay the release of a surety which was posted by the defendant in the action in substitution of a mechanic's lien. By filing the foregoing bond, the surety agrees to pay the lien claimant the amount a court of competent jurisdiction may adjudge to have been secured by the lien, with interest, costs,

---

are otherwise dissolved, or whose charter has been forfeited, shall nevertheless be continued as bodies corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against them, and of enabling them gradually to settle and close their business, to collect and discharge obligations, to dispose of and convey their property, and to distribute their assets, but not for the purpose of continuing the business for which the corporation shall have been established."

and attorneys' fees. NRS 108.210.[3] The proper perfection of the appeal stays the release of the surety. The surety bond filed to discharge Pierce's mechanic's lien specifically provided: "The condition of this obligation is such that if the above principal and surety, their executors, administrators and assigns, shall well and truly pay any judgment which may be rendered in favor of Robert A. Pierce Co., a Nevada corporation, on its claim contained in its notice and claim of lien not exceeding the sum of $55,000, then this obligation to be void; otherwise to remain in full force and effect." As indicated earlier in this opinion, Pierce recovered judgment in the court below. Pursuant to the conditions of Sherman Gardens' bond, it remains in full force and effect until Pierce's judgment is paid.

Appellant's final contention that its purported offer to settle the litigation should negate an award of interest and attorneys' fees is also without merit.

No offer of *judgment* was made as contemplated by NRCP, Rule 68, nor was a deposit made with the court as allowed by NRCP, Rule 67. Sherman Gardens had indicated a willingness to pay to Pierce the sum of $27,000, which represented the retentions it had withheld from Allied, if Pierce would release its mechanic's lien. A formal tender of the foregoing amount was never made by Sherman Gardens. Under these circumstances, a tender of an amount in *settlement* of a dispute, which does not make it clear that the recipient accepts it without impairing his claim for a larger amount, does not stop the running of interest even if the judgment does not exceed the amount of the offer. United States v. Fogarty, 344 F.2d 475 (6th Cir. 1965); Grant v. Auvil, 238 P.2d 393 (Wash. 1951).

## THE CROSS–APPEAL

The lower court, after hearing the appellant's motion to amend the findings of fact and conclusions of law, decreased the amount of the judgment by $20,000 and the interest proportionately. The judge reasoned that, since a default judgment was entered against Allied at the conclusion of the first trial (Allied was not represented by counsel and did not participate in the litigation) for the sum of $15,374.34, and that since

---

[3]This statute has been amended in 1965 and is presently NRS 108.2391. The substance of the statute remains unchanged.

there was no appeal from the default judgment, it had been decided by this Court in the first appeal that $25,374.34 was the true sum owing to Pierce from any of the defendants, and this determination became binding on the trial court as the "law of the case."

It cannot be implied from the previous opinion that we considered the issue of the true amount owing to Pierce from Allied. That issue was not before us on the first appeal and, since it was unnecessary to consider the issue in reaching our decision, one cannot imply that it was considered.

"All the propositions assumed by the court to be within the case, and all questions *presented* and *considered,* and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved [citation]. The judgment is authority upon all points assumed to be within the issues which the record shows the court *deliberately considered* and *decided* in reaching it." State of Nevada v. Loveless, 62 Nev. 312, 319, 150 P.2d 1015, 1018 (1944). (Emphasis supplied.) Absent the necessary implication that an issue was presented, considered, and deliberately decided, it does not become the law of the case and therefore does not bind the lower court on a remand. Lanigir v. Arden, 85 Nev. 79, 450 P.2d 148 (1969).

▬▬▬▬▬

The decision, however, of the lower court to delete $20,000 from the judgment and to reduce the interest correspondingly, is affirmed, based upon a different theory.

There is a split of authority in the United States on the issue of whether an owner who pays a contractor, who in turn uses this money to pay a subcontractor, can be compelled to pay twice, when the subcontractor credits the money to an account other than the owner's and brings suit against the owner to foreclose a lien. The better reasoned cases hold that the owner cannot be compelled to pay twice. The principles of justice and equity demand such a decision. Williams v. Willingham-Tift Lumber Co., 63 S.E. 584 (Ga.App. 1909).

It was pointed out in an early California case that:

"All payments made by the owner of a building to his contractor, and those made by the contractor to a material-man for materials furnished to be used in a building, should be applied in satisfaction of the original contract. Neither the contractor, nor a material-man, nor workman upon a building, can legally apply any portion of such payments to the satisfaction of general debts or demands existing between himself and others who

may be entitled to file liens upon the building against the owner. If that could be done, it would have the effect of subjecting the owner to payment of other debts between the contractor and his employees, outside of his "building contract." Goss v. Strelitz, 54 Cal. 640, 645 (Cal. 1880), concurring opinion.

The leading case in the United States following the theory we enunciate today is Sioux City Foundry and Mfg. Co. v. Merten, 156 N.W. 367 (Iowa 1916), wherein the court held:

"We hold the money of the owners was misappropriated, and that equity will correct this against the one who did the misappropriating, even if he did not know at the time that he was misappropriating, when no controlling equity stands in the way of the correction. We hold further that none such intervenes where the materialman loses, if at all, because he volunteered to use the money of one to pay the debt of another; while, on the other hand, the owners will, through an act of the materialman, be compelled to pay their debt to him twice— when on one side stands one who received $300 and credited some debtor of his in that amount, and, on the other, one who has paid $300 at a time when he owed it, and is now to pay it again, because the money was used to credit another debtor." 156 N.W., at 372.

The factual circumstances in the case of Dearth v. Robinson, 80 Nev. 272, 392 P.2d 512 (1964), are directly in point with those presented in the case at bar, and our decision in that case supports the decision we reach today. We pointed out in Dearth:

"We can perceive no undue hardship upon lien claimants by requiring them to keep appropriate records in support of their claims of lien." 80 Nev., at 278. The lower court specifically found that at the time of the $20,000 payment Pierce did not know the source of the payment. Pierce discovered the source at a later time. When a subcontractor performs work on more than one job for a contractor, cases in other jurisdictions impose upon the subcontractor the burden of ascertaining the correct source of the payment, before he can place a mechanic's lien upon an owner's property. Williams v. Willingham-Tift Lumber Co., supra; Westwood Building Materials Co. v. Valdez, 322 P.2d 79 (Cal.App. 1958). In a three-party situation, we do not feel that the imposition of this burden upon a subcontractor is too onerous a requirement in order that the subcontractor be entitled to perfect a lien upon an owner's property. The general rule that a creditor has the right, in the absence of direction by his debtor, to apply a payment on

account, is a rule between creditor and debtor, and does not apply where the money is received by the debtor from a third party. LRA 1916 D. 1258.[4]

In the case at bar, the owner, Sherman Gardens, retained $27,000 from the final payment to Allied, the contractor with whom Pierce had its contract. In reducing the judgment, the lower court found Sherman Gardens was obligated to pay the principal amount of $25,374.34, which is less than the sum Sherman Gardens retained from Allied.

For the reasons indicated in this opinion, we affirm.

ZENOFF, C. J., BATJER, THOMPSON, and GUNDERSON, JJ., concur.

---

[4]The case of Titus v. Electric Supply Co., 45 P.2d 515 (Okla. 1935), which supports the view contrary to our holding today, claims in a note to the decision that it represents the majority view. Our research indicates that if there is a majority view it is the one we enunciate today. The cases supporting one theory or the other often are decided on the basis of the knowledge of the subcontractor, at the time of the payment, of the source of the payment. We feel those cases are not in point, since we hold that the subcontractor has the burden of ascertaining the source of the payment in order to perfect his lien.