An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTONIO LAVON DOYLE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62807

**FILED**

SEP 2 2 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a second post-conviction petition for a writ of habeas corpus in a death penalty case.[1] Eighth Judicial District Court, Clark County; Jennifer P. Togliatti, Judge.

Appellant Antonio Lavon Doyle contends that the district court erred by denying his petition as untimely and barred by statutory laches and argues that the district court should have conducted an evidentiary hearing on his allegations of good cause and prejudice to overcome the applicable procedural default rules. Doyle also argues that the failure to consider his petition will result in a fundamental miscarriage of justice because he is actually innocent of first-degree murder and ineligible for the death penalty.

---

[1]Because appellant is represented by counsel in this matter, we decline to grant him permission to file pro se documents in this court. *See* NRAP 46(b). Accordingly, the clerk of this court shall return, unfiled the pro se documents that appellant submitted to this court on August 8, 2013, and September 20, 2013, in this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-28575

"[A] petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur." NRS 34.726(1). Doyle filed his second post-conviction petition for a writ of habeas corpus in the district court twelve years after this court issued its remittitur on his direct appeal. Therefore, the petition was untimely.[2]

In order to overcome the delay in filing his second petition, Doyle had the burden of demonstrating: (a) good cause for his failure to present the claims in a timely manner and (b) actual prejudice. *See* NRS 34.726(1). Good cause may be demonstrated by showing ineffective assistance of counsel or an impediment external to the defense such as a factual or legal basis for a claim that was not reasonably available or interference by officials making compliance impracticable. *Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003). However, good-cause arguments must be made in a timely fashion and are also subject to the procedural default rules. *Id.* "Actual prejudice requires [petitioner] to show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225,

---

[2]Although the district court did not dismiss Doyle's petition under NRS 34.810, most of his claims could have been raised in a prior proceeding to secure relief or do not allege new or different grounds for relief. Therefore, those claims are successive and also barred by NRS 34.810.

232, 112 P.3d 1070, 1075 (2005) (internal quotations marks omitted). Where, as here, the State affirmatively pleaded laches, a petition may be dismissed if the delay in filing the petition prejudices the State in its ability to retry the petitioner "unless the petitioner demonstrates that a fundamental miscarriage of justice has occurred." NRS 34.800(1)(b). A period exceeding five years between the judgment or a decision on direct appeal and the filing of a petition creates a rebuttable presumption of prejudice to the State. NRS 34.800(2). In order to be entitled to an evidentiary hearing, Doyle must raise claims that are supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *Hargrove v. State,* 100 Nev. 498, 502–03, 686 P.2d 222, 225 (1984). Because the specific factual allegations contained in Doyle's petition would not have entitled him to relief on any of his claims the district court did not err by denying him an evidentiary hearing.

*Good-cause arguments*

First, Doyle contends that the district court erred by denying his petition because our decision on his *Batson*[3] claim on direct appeal, *Doyle v. State,* 112 Nev. 879, 889 & n.2, 921 P.2d 901, 908 & n.2 (1996), *overruled in part by Kaczmarek v. State,* 120 Nev. 314, 91 P.3d 16 (2004), was contrary to clearly established federal constitutional law and amounts to structural error. The fact that a *Batson* error amounts to structural error, however, does not relieve Doyle of his obligation to demonstrate good cause and prejudice. *See, e.g., Thornburg v. Mullin,* 422 F.3d 1113, 1141 (10th Cir. 2005) ("[E]ven structural errors are subject to state

---

[3]*Batson v. Kentucky,* 476 U.S. 79 (1986).

procedural bars."). This court is prohibited by statute from addressing the merits of Doyle's *Batson* claim unless he establishes good cause for his 12-year delay and failure to raise this claim in his first post-conviction petition which was filed in 1997, NRS 34.726(1); NRS 34.810(1)(b), and explains why this claim should not be barred by the doctrine of the law of the case, *see generally Arizona v. California*, 460 U.S. 605, 618-19 & n.8 (1983).

The most Doyle did to demonstrate good cause in his petition for a writ of habeas corpus was to make two conclusory allegations in separate sections of his petition that (1) his "conviction and death sentence are invalid under the state and federal constitutional guarantees of . . . effective assistance of counsel . . . because prosecutors excused prospective jurors on the basis of race" and (2) "previous counsel . . . failed to raise substantial constitutional issues during state post-conviction proceedings." Doyle does not specifically allege that post-conviction counsel was ineffective for failing to raise this *Batson* claim in his first post-conviction petition or identify which substantial constitutional issues he is referring to. Even if he had claimed that post-conviction counsel was ineffective, he would have to demonstrate that counsel's performance was deficient for failing to raise the *Batson* claim for a third time after it had been previously denied on direct appeal and in a separate petition for rehearing. This would be exceedingly difficult because, at the relevant time, this court's interpretation of the law-of-the-case doctrine indicated that "[t]he supreme court has no power to review its own judgments in the same case, except upon petition for rehearing, in accordance with the rules established for that purpose," *State v. Loveless*, 62 Nev. 312, 318, 150 P.2d

1015, 1017 (1944) (quoting *Wright v. Carson Water Co.*, 22 Nev. 304, 308, 39 P. 872, 874 (1895)). It therefore is unlikely that Doyle would have been able to demonstrate that counsel was deficient for failing to raise this claim in his first petition for a writ of habeas corpus, even if he had raised the alleged ineffective assistance of prior post-conviction counsel in a timely fashion, an issue that is addressed further below. In the absence of any other argument establishing good cause for Doyle's failure to raise this claim in his first petition,[4] he has failed to demonstrate that the district court erred by denying his petition with respect to this claim.[5]

---

[4]Doyle cites *Bejarano v. State*, 122 Nev. 1066, 1074, 146 P.3d 265, 271 (2006), and notes that it mentions a narrow exception to the law-of-the-case doctrine, but he did not specifically argue that *Bejarano* amounts to good cause. To the extent that Doyle's opening appellate brief can be construed as making such an argument, we decline to address that claim in the first instance, *see McNelton v. State*, 115 Nev. 396, 416, 990 P.2d 1263, 1276 (1999), except to observe that the relevant language in *Bejarano* was based on an earlier decision in *Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001), and therefore this exception had been available for some time before Doyle filed his second state habeas petition.

[5]Even if we were to apply the exception to the law-of-the-case doctrine suggested in *Pellegrini* and *Bejarano* and Doyle also overcame the applicable procedural bars, we are not persuaded that he would be entitled to relief. In particular, he has not identified any controlling authority that clearly required the trial court to revisit its denial of a *Batson* objection at step one with respect to one juror when it subsequently required a neutral explanation under step two for a subsequent objection with regard to another juror. *Cf. Higgins v. Cain*, 720 F.3d 255, 267 (5th Cir. 2013) (concluding there was a "want of authority" addressing whether trial court had to revisit prior *Batson* objections that had been rejected based on no prima facie showing of discrimination where later *Batson* objections regarding other jurors proceeded to step two of *Batson* analysis); *Williams v. Haviland*, 394 Fed. Appx. 397 (9th Cir. 2010) (unpublished decision)

*continued on next page...*

Second, Doyle contends that he was denied his statutory right to post-conviction counsel under NRS 34.820(1)(a) because "[n]o attorney was ever appointed to represent [him] for the purposes of his state post-conviction proceedings." Instead, he contends that his counsel was only appointed pursuant to SCR 250(IV)(H)[6] to investigate whether *trial* counsel was effective. We conclude that Doyle's claim is belied by the record. According to the district court minutes, Scott L. Bindrup accepted appointment as counsel during a proceeding involving Doyle's first post-conviction petition for writ of habeas corpus and request for the appointment of counsel. Following his appointment, counsel filed a memorandum of points and authorities in support of Doyle's pro se petition. Therefore, Doyle has not demonstrated that he was denied his statutory right to post-conviction counsel and the district court did not err

---

*...continued*

("Contrary to Williams's suggestion, *Batson*'s general requirement that the trial court assess 'all relevant circumstances' in deciding whether a defendant has made a prima facie case for discrimination does not 'squarely address' the specific question whether a court must reconsider its denial of a *Batson* motion with regard to one juror if it subsequently finds a prima facie case of discrimination with regard to a different juror."); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1312-13 (11th Cir. 2010) (observing that court had located no precedent holding that "before ruling on a *Batson* objection based on race, a trial court has a duty *sua sponte* to reconsider any ruling it previously may have made on a *Batson* objection based on the same race"). Accordingly, he has not shown that this court's prior decision on direct appeal was contrary to clearly established and controlling federal law.

[6]This rule was adopted by ADKT 109 on February 20, 1990, and went into effect on June 1, 1990. The provision was later repealed by this court. *See Nika v. State*, 120 Nev. 600, 606, 97 P.3d 1140, 1145 (2004).

by denying his petition with respect to this claim. Furthermore, even crediting Doyle's claim for purposes of argument, he does not offer good cause to overcome the bar his delay in raising the claim creates.

Third, Doyle contends that post-conviction counsel was ineffective for numerous reasons. While post-conviction counsel's ineffectiveness may constitute good cause to raise claims in a successive petition, *Crump v. Warden*, 113 Nev. 293, 934 P.2d 247 (1997); *McKague v. Warden*, 112 Nev. 159, 912 P.2d 255 (1996), those claims are subject to NRS 34.726(1), *Riker*, 121 Nev. at 235, 112 P.3d at 1077; *Pellegrini v. State*, 117 Nev. 860, 869-78, 34 P.3d 519, 525-31 (2001), and must be raised within a reasonable time after they become available, *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506.

Doyle filed his second post-conviction petition for a writ of habeas corpus in district court more than nine years after remittitur issued on the appeal from his first post-conviction petition. Doyle's only claim explaining this period of delay is that the State's failure to comply with federal court-ordered discovery excuses his delay. Doyle's counsel filed a motion for leave to conduct discovery in federal court, seeking evidence in the possession of the Las Vegas Metropolitan Police Department, North Las Vegas Police Department, and the Clark County District Attorney's Office nine months after remittitur. Doyle does not specifically disclose which documents and information were sought through discovery in federal court, when each of the documents was obtained, or how the documents relate to each of the claims in his successive petition. But there is some indication that these documents were related to an alleged due process violation, *see Mazzan v. Warden*,

116 Nev. 48, 67, 993 P.2d 25, 37 (2000), and not one of his ineffective-assistance-of-counsel claims. During a hearing on Doyle's petition, he argued that he should not be faulted for waiting for the discovery litigation to be resolved in federal court before filing his successive petition in state court because, if he had proceeded with claims unrelated to the federal discovery litigation in state court, he would have been precluded from bringing additional claims in a subsequent petition under the procedural default rules because Nevada law requires all claims to be brought in the same petition. While it is true that the procedural default rules apply when a petitioner fails to include an available claim in a prior petition, NRS 34.810(1)(b)(2), a petitioner can still overcome those bars by showing good cause and prejudice, NRS 34.810(3). Doyle did not explain why he could not have raised his claims that were unrelated to the discovery litigation in a timely fashion. If the State's failure to comply with federal court-ordered discovery can establish good cause to overcome the procedural default rules, as Doyle contended, logically this same failure would also provide good cause in a subsequent state petition filed after the resolution of his claims which were unrelated to the discovery litigation. We hold that the federal discovery litigation does not provide good cause for Doyle's delay in raising any claims unrelated to the discovery. And, because Doyle does not explain how his ineffective-assistance-of-counsel claims relate to the discovery litigation, he has not established good cause for his failure to raise these claims within a reasonable amount of time after they became available. Therefore, he is not entitled to relief on any of those claims and the district court did not err by denying his petition with respect to those claims.

Fourth, Doyle contends that the State violated his due process rights by withholding impeachment evidence and evidence of quid pro quo agreements and coercion involving the State and several witnesses who testified against him. *See Mazzan*, 116 Nev. at 67, 993 P.2d at 37. Withheld evidence can establish good cause to overcome the procedural default rules if the petitioner raises the due process claims within a reasonable time after discovery of the withheld evidence. *See id.*; *State v. Huebler*, 128 Nev., Adv. Op. 19, 275 P.3d 91, 95 n.3 (2012); *Hathaway*, 119 Nev. at 254-55, 71 P.3d at 507-08. The claim based on documents Doyle contends demonstrate quid pro quo agreements and coercion was not raised within a reasonable time because those documents were discovered at least seven years before he filed his successive petition. As for the alleged impeachment evidence, this document is not dated and Doyle does not disclose when he discovered it. Therefore, it is difficult to determine whether this claim was raised within a reasonable time after discovery of the evidence. Even if both due process claims had been raised within a reasonable amount of time after discovery of the withheld evidence, Doyle has also failed to demonstrate actual prejudice. *See Mazzan*, 116 Nev. at 67, 993 P.2d at 37 (requiring petitioner to demonstrate that the withheld evidence was material to establish actual prejudice). Therefore, he is not entitled to relief and the district court did not err by denying his petition with respect to these claims.

Fifth, Doyle claims that this court's opinion in *McConnell v. State*, 120 Nev. 1043, 1049, 102 P.3d 606, 611 (2004), provides good cause for his failure to bring his challenge to the felony aggravating circumstance based on first-degree kidnapping in his first post-conviction

(O) 1947A

petition. Although good cause may be demonstrated by showing an impediment external to the defense such as a factual or legal basis for a claim that was not reasonably available, Doyle did not raise this claim within a reasonable amount of time after this claim became available. *See Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506 (good cause arguments must be made in a timely fashion and are also subject to the procedural default rules). Therefore, the district court did not err by denying his petition with respect to this claim.

Sixth, Doyle claims that this court's opinion in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), provides good cause for his failure to bring his instructional-error claim in his first post-conviction petition. This court's decision in *Nika*, 124 Nev. at 1288-89, 198 P.3d at 850-51, clarifies that the premeditation instruction given—known as the *Kazalyn*[7] instruction—was an accepted instruction until *Byford*, 116 Nev. at 234-38, 994 P.2d at 713-15, announced a change in state law. This change applies to murder convictions that were not final when *Byford* was decided. *Id.* Because Doyle's conviction was final when *Byford* was decided, *see Colwell v. State*, 118 Nev. 807, 820, 59 P.3d 463, 472 (2002), *Byford* does not apply to his case and he does not have good cause to raise this claim.[8]

---

[7]*Kazalyn v. State*, 108 Nev. 67, 857 P.2d 578 (1992).

[8]Doyle also contends that the procedural default rules cannot be applied to bar his successive petition because they are not applied in a consistent manner in violation of the equal protection and due process clauses. This court has rejected similar arguments. *Riker*, 121 Nev. at 235-42, 112 P.3d at 1076-82. Furthermore, Doyle has not demonstrated that this court applies the procedural default rules in a subjectively discretionary fashion. Therefore, this claim lacks merit.

*Fundamental-miscarriage-of-justice arguments*

When a petitioner cannot demonstrate good cause, the district court may nonetheless excuse a procedural bar if petitioner demonstrates that failure to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. A fundamental miscarriage of justice requires "a colorable showing" that petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Id.*

Doyle argues he is actually innocent of first-degree murder because he lacked the mens rea to commit the crime. However, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Doyle did not allege that there was insufficient evidence to support his first-degree murder conviction on direct appeal and he has not presented any new evidence indicating that he lacked the mens rea to commit first-degree murder in his successive petition. In fact, Doyle provides little, if any, analysis of the evidence presented at trial in support of this contention. Therefore, he is not entitled to relief on this claim.

Doyle also argues that he is ineligible for the death penalty because his felony aggravator is invalid under *McConnell*, 120 Nev. 1043, 102 P.3d 606 (2004), and his mitigation evidence is so strong that no rational juror would have found him death eligible by determining that the remaining aggravating circumstances were not outweighed by the mitigating circumstances. "Where the petitioner has argued that the

SUPREME COURT
OF
NEVADA

(O) 1947A

procedural default should be ignored because he is actually ineligible for the death penalty, he must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537 (citing *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).

Because Doyle's aggravating circumstance for committing murder while he was engaged in the commission of or an attempt to commit any first-degree kidnapping was also the predicate for felony murder, that aggravating circumstance was impermissible under the United States and Nevada constitutions as the jury verdict does not indicate whether felony murder or premeditated and deliberate murder formed the basis for the jury's finding of guilt. *See McConnell*, 120 Nev. at 1069, 102 P.3d at 624; *Bejarano v. State*, 122 Nev. 1066, 1078, 146 P.3d 265, 274 (2006) (applying *McConnell* retroactively). Therefore, this aggravating circumstance should not have been considered by the jury. Although two aggravating circumstances remain, this court must reweigh the aggravating circumstances against the mitigating circumstances to determine whether Doyle remains death eligible. *See, e.g., Servin v. State*, 117 Nev. 775, 786, 32 P.3d 1277, 1285 (2001). Doyle argues that this court should also consider his new mitigation evidence in this analysis because in *State v. Haberstroh*, 119 Nev. 173, 184, 69 P.3d 676, 684 (2003), this court considered the mitigation evidence discovered during a post-conviction evidentiary hearing in its analysis. Doyle is mistaken. As we explained in our order denying the petition for rehearing in that case, "we did not consider mitigating evidence not presented during the trial in concluding that the invalid [aggravator] was not harmless beyond a

reasonable doubt." *State v. Haberstroh*, Docket No. 38600, at 2 n.1 (Order Denying Rehearing, August 29, 2003).

The first aggravating circumstance found by the jury was that the murder was committed by a person under a sentence of imprisonment. *See* NRS 200.033(1). Two and one half years before the murder, Doyle pleaded guilty to attempted burglary, was sentenced to three years in prison, his sentence was suspended, and he was placed on probation for a period not to exceed three years. Sixteen months later, Doyle's probation was revoked and he was sentenced to prison. He was released on parole on October 19, 1993, three months before the murder.

The second aggravating circumstance found by the jury was that the murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody. *See* NRS 200.033(5). This is the most serious of the aggravating circumstances found by the jury. The State presented evidence that the murder victim threatened to call the police and report Doyle and his codefendants for having raped her earlier that night at their apartment. According to the State, the victim was murdered to prevent her from reporting the incident to the police.

We conclude that these aggravating circumstances were not outweighed by the mitigating circumstances and that Doyle has not demonstrated by clear and convincing evidence that but for the *McConnell* error "no reasonable juror would have found him death eligible." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537 (citing *Sawyer*, 505 U.S. at 336). Therefore, the failure to consider the petition will not result in a fundamental miscarriage of justice.

Having considered Doyle's contentions[9] and concluded that he is not entitled to relief, we

ORDER the judgment of the district court AFFIRMED.[10]

_____, C.J.
Hardesty

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Pickering

CHERRY, J., with whom SAITTA, J., agrees dissenting:

I would reverse the district court's order. This court's failure to remedy the structural error raised by Doyle in his direct appeal and petition for rehearing was an impediment external to the defense that resulted in a manifest injustice. The court should have concluded that the district court clearly erred by rejecting Doyle's *Batson* challenge in our decision on direct appeal in 1996 because he demonstrated that it is more likely than not that the State struck at least one prospective juror because of race. The court erred by concluding that, "after accepting the State's

_____

[9]Doyle does not make any good cause or prejudice arguments with respect to a number of claims in his opening brief. He merely argues that the cumulative effect of these errors warrants reversal. Because all of these claims are procedurally barred and Doyle did not demonstrate good cause with respect to any of his claims, he is not entitled to relief.

[10]The Honorable Michael L. Douglas, Justice, did not participate in the decision of this matter.

explanation for the exclusion of [two African-American prospective jurors], it was not error for the district court to refuse to require an explanation for the exclusion of Ms. Velasquez," the first African-American struck by the State after the conclusion of for-cause challenges. *Doyle*, 112 Nev. at 889 n.2, 921 P.2d at 908 n.2. This conclusion was contrary to clearly established federal constitutional law. *Batson* required the State to provide a race-neutral explanation for striking Velasquez after the district court found a prima facie case of intentional discrimination. *Batson v. Kentucky*, 476 U.S. 79, 98 (1986). The State's attempt to strike every African American in the venire was certainly sufficient to establish a prima facie case of intentional discrimination. The State's failure to provide a race-neutral reason was also evidence of discrimination. *See Paulino v. Harrison*, 542 F.3d 692, 703 (9th Cir. 2008). Finally, there was no circumstantial evidence in the record that explained why Velasquez was struck and other similarly situated veniremembers were not struck. Five of the twelve prospective jurors who were not struck and remained on the jury, like Velasquez, had contact with the criminal justice system or a close relative who had contact with the criminal justice system, as did two of the three alternate jurors, one of whom served as a juror during the penalty phase. This kind of disparate treatment is evidence of purposeful discrimination. *See Ford v. State,* 122 Nev. 398, 405, 132 P.3d 574, 578-79 (2006). "Discriminatory jury selection is particularly concerning in capital cases [such as this] where each juror has the power to decide whether the defendant is deserving of the ultimate penalty, death." *Conner v. State*, 130 Nev., Adv. Op. 49, 327 P.3d 503, 507 (2014). The failure of this court to remedy the *Batson* error on direct appeal resulted in a manifest

injustice. *See United States v. Brown*, 352 F.3d 654, 664 (2d Cir. 2003) ("There is . . . usually little question that any *Batson* error we find would affect a defendant's substantial rights the violation of which would result in manifest injustice." (internal quotation marks omitted)).

Additionally, we have the power to disregard the law-of-the-case doctrine to correct a manifest injustice. *Bejarano v. State*, 122 Nev. 1066, 1074, 146 P.3d 265, 271 (2006) ("[T]he doctrine of the law of the case is not absolute, and we have the discretion to revisit the wisdom of our legal conclusions if we determine that such action is warranted."); *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) ("Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice."), *decision supplemented*, 466 U.S. 144 (1984); *see also Tien Fu Hsu v. Cnty. of Clark*, 123 Nev. 625, 630, 632, 173 P.3d 724, 729, 730 (2007) (suggesting an exception to the law-of-the-case doctrine when "there has been an intervening change in controlling law").

Furthermore, Doyle can establish good cause for his failure to raise this claim in his first post-conviction petition for a writ of habeas corpus because there has been an intervening change in this court's interpretation of the law-of-the-case doctrine between the time he filed his first post-conviction petition for a writ of habeas corpus and his second post-conviction petition. *Compare Sherman Gardens Co. v. Longley*, 87 Nev. 558, 563, 491 P.2d 48, 52 (1971); *State v. Loveless*, 62 Nev. 312, 318, 150 P.2d 1015, 1017 (1944); *Wright v. Carson Water Co.*, 22 Nev. 304, 308, 39 P. 872, 874 (1895)), *with Hsu*, 123 Nev. at 630, 632, 173 P.3d at 729-30; *Bejarano*, 122 Nev. at 1074, 146 P.3d at 271. At the time Doyle filed his

first post-conviction petition, this court had declared that "[t]he supreme court has no power to review its own judgments in the same case, except upon petition for rehearing, in accordance with the rules established for [that] purpose." *Sherman Gardens Co.*, 87 Nev. at 563, 491 P.2d at 52; *Loveless*, 62 Nev. at 318, 150 P.2d at 1017. Since Doyle filed his first post-conviction petition, however, this court has recognized the narrow exceptions discussed above. Thus, Doyle has good cause for raising this claim in his second post-conviction petition because the legal basis for his claim was not reasonably available in 1997 when he filed his first post-conviction petition for relief. *See Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003).

In my opinion, Doyle need not establish actual prejudice. *See, e.g., Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007) ("[A] defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice."); *see also Williams v. Woodford*, 396 F.3d 1059, 1069 (9th Cir. 2005) (Rawlinson, J., dissenting). But even if such a showing is required, I believe that the structural error is sufficient. A structural defect, such as the one which occurred in this case, affects the framework within which the trial proceeds and, "'[w]ithout these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (quoting *Rose v. Clark*, 478 U.S. 570, 577-578 (1986)). Consequently, Doyle can demonstrate that the *Batson* error worked "to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *State v. Eighth*

*Judicial Dist. Court (Riker),* 121 Nev. 225, 232, 112 P.3d 1070, 1075 (internal quotations omitted). For these reasons, I would conclude that the district court erred by denying Doyle's petition as to the *Batson* claim.

_____, J.
Cherry

I concur:

_____, J.
Saitta

cc:    Hon. Jennifer P. Togliatti, District Judge
       Federal Public Defender/Las Vegas
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk
       Antonio Lavon Doyle